# Exhibit 6

| | | |
|---|---|---|
| ROBERT A. ZIRKIN | * | IN THE |
|     Plaintiff, | * | CIRCUIT COURT |
| | * | FOR |
| v. | * | BALTIMORE COUNTY |
| SHANDY MEDIA, INC., et al. | * | |
|     Defendants. | * | Case No. 03-C-17-010285 |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## OPINION AND ORDER

This matter is before the Court on the *Motion to Dismiss the Complaint* filed by the Defendants, Shandy Media, Inc., Raymond Attipa, Tigranouhi Attipa, and Angela Struck, on the grounds that this Court lacks personal jurisdiction over them. The Plaintiff contends that these Defendants, California residents, are subject to jurisdiction under Maryland's long arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103 (b) (4).[1] (Plaintiff's Opposition to Shandy Defendant's Motion to Dismiss, p. 14).

## Burden of Proof

The burden is on the Plaintiff to prove the factual basis for the exercise of personal jurisdiction. Taylor v. CSR Ltd., 181 Md. App. 363, 373 (2008). When the Court decides a pretrial motion regarding personal jurisdiction without conducting an evidentiary hearing, the Plaintiff need only make a prima facie showing of personal jurisdiction to defeat a Motion to Dismiss. Id. at 373-374. See also Carefirst of Maryland, Inc. v. Carefirst

---

[1] Md. Code Ann., Cts. & Jud. Proc. § 6-103 (b) (4) provides:
(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State

1

Pregnancy Centers, Inc., 334 F.3d 390, 396(4th Cir. 2003). "The Court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction when deciding a motion to dismiss on jurisdictional grounds." Taylor v. CSR Ltd., 181 Md. App. at 374.

## Statement of Facts

The Plaintiff, Robert A. Zirkin, is a Maryland resident and attorney who serves as a Maryland State Senator. The Defendant, Shandy Media, is California based media company that operates several websites concerning topics that include sports, celebrity news, and food. One of these websites, The Fumble, is a sports news website that the host states has "the hottest sports news and gossip." The individual Defendants, Raymond Attipa, Tigranouhi Attipa, and Angela Struck, are residents of California. Mr. Attipa and Ms. Attipa are the founders and operators of Shandy Media, and Ms. Struck works for Shandy as an independent contractor and serves as the host for The Fumble. Shandy Media created and posted a News Report and video to its website, The Fumble, that allegedly made defamatory statements about the Plaintiff. The video was accessible to Maryland residents and viewed by Maryland residents.

The Plaintiff's *First Amended Complaint* alleges in relevant part:

"17. On October 17, 2017, The Fumble, a sports news website owned and operated by Shandy Media, published a video entitled, 'Ravens fan CAUGHT Shopping for Prostitutes on Craigslist.'

18. The video, which is one minute, 49 seconds in length, features a host of The Fumble, Defendant Angela Struck, discussing a video that was captured of a man supposedly looking for prostitutes on Craigslist at the Ravens vs. Bears game on

October 15, 2017 at M&T Bank Stadium in Baltimore. A digital copy of the video is attached to this Complaint as Exhibit #1 and its contents are incorporated herein.

19. Struck briefly discusses the outcome of the game before turning to the more salacious purpose of the video:

> 'Sunday was not a great day for Baltimore. Joe Flacco had some trouble and lost to the Bears. Dropping the Ravens to 3 and 3 this season. The game was a close one, ending 27-24, but apparently it wasn't enough to hold every fan's attention. Most importantly this grey haired Ravens fan who was caught creeping on Craigslist for Prostitutes during the game. What's the weirdest thing you've actually [sic] glanced on someone's iPhone. Let me know your craziest in the comments below.'

20. Around the 00:55 second mark, the video slowly pans up for several seconds on the following image of Mr. Zirkin: [The First Amended Complaint contains a picture of the Plaintiff that was shown on the video.]

21. Not only does the video show Mr. Zirkin but pictured behind him in the photograph is his 8-year old daughter. Mr. Zirkin's daughter is a Maryland resident.

22. This is a stock photograph of Mr. Zirkin obtained from Getty Images, a stock photo company. A stamp in the lower left corner of the photograph states "GETTY IMAGES."

23. The photograph was taken of Mr. Zirkin and his daughter when they were in London, England at the Ravens vs. Jaguars game on September 24, 2017.

24. At the exact same time the video is showing the photograph of Mr. Zirkin, the video's host, Defendant Struck, continues:

> 'Well this man needs to be a bit more DL. He's holding up the phone for all the world to see and unfortunately for him the person sitting behind him is active on social media. Check out the video he recorded and posted online with the caption 'Craigslist's new target demographic is old, white, Ravens fan."

25. In displaying this stock photograph of Mr. Zirkin while narrating that 'this man' was the one 'holding up the phone' while searching for prostitutes, Defendants

3

Struck and Shandy Media are falsely portraying Mr. Zirkin as the man caught looking online for prostitutes at the game.

26. The Shandy Media video then plays the video, taken by another attendee at the October 15, 2017 Ravens game, of an individual seated in front of him in the stands scrolling on his phone. Only the back of the man's head, his hands, and some of his glasses frames can be seen in the video. The video spends several seconds zooming in on the man's phone.

27. In the Shandy Media video, Defendant Struck continues to announce:

> 'It's a little hard to see but if you zoom in on the video you can see 'Hot Hot Hot Sexy Brunette Bombshell and Sexy Pics.' Yikes. Ugh. I feel bad for this guy's wife and kids. What's the raunchiest thing you've ever seen go down at a sporting event. Let me know your best in the comments below.'

28. The zoomed in image of the phone shown during this part of the Shandy Media video is below: [The First Amended Complaint contains a picture of the image on the phone].

29. Throughout the video, Defendant Struck also encourages viewer interaction with The Fumble. Towards the start of the video, she states, 'To find out the hottest sports news and gossip, be sure to hit that subscribe button and join our notification squad.' (Ex. 1, Shandy Video). Around the 0:44 mark, she asks viewers, 'What's the weirdest thing you've accidentally glanced at on someone's iPhone? Let me know your craziest in the comments below.' (Id). At the 1:34 mark, she asks viewers, 'What's the raunchiest thing you've ever seen go down at a sporting event? Let me know your best in the comments below.' (Id.)

30. The video ends with Struck stating, 'For the hottest sports news and gossip, like, subscribe, and comment below, and be sure to shop The Fumble store for the latest NFL gear,' as the following screen appears on the video. [The First Amended Complaint contains a picture with links to subscribe and shop].

31. Defendant Struck or another employee or agent of Defendant Shandy Media pulled the stock photograph of Mr. Zirkin from Getty Images as an illustration of a male Ravens fan."

There is no allegation by the Plaintiff that any of the California Defendants had any physical presence in Maryland. Rather, the Plaintiff contends that the Defendants' internet activity subjects them to personal jurisdiction in Maryland.

## Legal Principles

For the Court to exercise personal jurisdiction over a non-resident defendant, the Court must determine that (1) the exercise of jurisdiction is authorized under Maryland's long arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, and (2) the exercise of jurisdiction comports with due process requirements of the Fourteenth Amendment. Beyond Systems Inc. v. Realtime Gaming Holding Co. LLC., 388 Md. 1, 14-15 (2005). "Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of The Federal Constitution, our statutory inquiry merges with our constitutional examination. Id. at 22. " A court's exercise of personal jurisdiction over a nonresident defendant satisfies due process requirements if the defendant has 'minimum contacts' with the forum, so that to require the defendant to defend its interests in the forum state 'does not offend traditional notions of fair play and substantial justice.'" Id, citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945).

The standard for determining the existence of personal jurisdiction over a nonresident defendant depends upon whether the defendant's contacts with the forum state also provide the basis for the suit. Beyond Systems Inc. v. Realtime Gaming Holding

5

Co. LLC., 388 Md. at 22. In the present case, the Plaintiff contends that the defendant's contacts with Maryland form the basis for the suit, and therefore, they may establish "specific jurisdiction." Id. at 26. In determining whether specific jurisdiction exists, the Court considers:

(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the State;

(2) whether the plaintiffs' claims arise out of those activities directed at the State; and

(3) whether the exercise of personal jurisdiction would be constitutionally reasonable. Id, citing Carefirst of Maryland Inc., 334 F. 3d at 397, ALS Scan, 293 F. 3d at 711-12.

In the context of internet activity forming the basis for personal jurisdiction, Courts have adopted the "sliding scale" model enunciated in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997):

> "Nevertheless, our review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. E.g. CompuServe, Inc. v. Patterson, 89 F.3d 1257 (6th Cir.1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. E.g. Bensusan Restaurant Corp., v. King, 937 F.Supp. 295 (S.D.N.Y.1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of

6

jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo.1996)."

952 F. Supp. at 1124.

In Beyond Systems, the Maryland Court of Appeals acknowledged the Zippo framework for determining whether websites on the internet confer personal jurisdiction by the Court, but considered it "not particularly well-suited for use in the general personal jurisdiction inquiry because 'even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction.'" 388 Md. at 25. In the present case, the Plaintiff argues that Maryland courts have specific jurisdiction over the Defendants, not general jurisdiction.

In ALS Scan, Inc. v. Digital Service Consultants, Inc., 293 F. 3d 707 (4th Cir. 2002), the Fourth Circuit Court of Appeals adopted the Zippo model for internet based specific jurisdiction, and adapted it to principles enumerated by the Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 70 L. Ed. 2d 804 (1984). ALS Scan, Inc. provides the standard for determining whether a court can exercise personal jurisdiction over a nonresident who places information on the internet. Young v. New Haven Advocate, 315 F. 3d 256, 258 (2002). In ALS Scan, Inc., the Fourth Circuit Court of Appeals held that:

"a state may, consistent with due process, exercise judicial power over a person outside of the state when that person 1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in

7

the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State." 293 F.3d at 714.

Thus, "a person's action of placing information on the Internet is not sufficient by itself to subject that person to personal jurisdiction in each state in which the information is accessed." Id. at 712, Carefirst, 334 F. 3d at 399. "Something more than posting and accessibility is needed to indicate that the defendants purposefully (albeit electronically) directed their activity in a substantial way to the forum state." Id.

As analyzed by the Fourth Circuit Court of Appeals in Carefirst, "In Calder, the Supreme Court held that a court may exercise specific personal jurisdiction over a nonresident defendant acting outside of the forum when the defendant has intentionally directed his tortious conduct toward the forum state, knowing that that conduct would cause harm to a forum resident." 334 F. 3d at 397-398. The Fourth Circuit further "emphasiz[ed the] importance, in light of Calder, of evidence that the defendant expressly aimed or directed its conduct toward [the] forum state and noting that business activities focusing 'generally on customers located throughout the United States and Canada without focusing on and targeting' forum state cannot yield personal jurisdiction." 334 F. 3d at 401.

Thus, in Carefirst, the Fourth Circuit held that to bring the defendant within the jurisdiction of the Maryland courts, "the company must have done something more than merely place information on the Internet. Rather, the [defendant] must have acted with the 'manifest intent' of targeting Marylanders. Whether [the defendant] intended to target Marylanders can be determined only from the character of the website at issue." 334 F. 3d at 401.

8

In Carefirst, the Court held that "although the defendant had a generally accessible, semi-interactive internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular," and "a company's sales activities focusing generally on customers located throughout the United States and Canada without focusing on and targeting forum state do not yield personal jurisdiction." 334 F. 3d at 401.

In Young v. New Haven Advocate, 315 F. 3d 256 (4th Cir. 2002), two Connecticut newspapers posted news articles on the internet that allegedly defamed the warden of a Virginia prison. The Plaintiff argued that the Virginia District Court had specific personal jurisdiction over the newspaper defendants because the newspapers, knowing the plaintiff was a Virginia resident, intentionally discussed and defamed him in the articles, and the newspapers posted the articles on their websites which were accessible in Virginia, and the primary effects of the defamatory statements on the warden's reputation were felt in Virginia, all of which the defendants understood. The Court stated that:

> "[a]lthough the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the defendant's own [sufficient minimum] contacts with the state if jurisdiction ... is to be upheld." 315 F.3d at 262, quoted in Carefirst, 334 F. 3d at 401.

The Court emphasized "how important it is in light of *Calder* to look at whether the defendant has expressly aimed or directed its conduct toward the forum state." Id. citing ESAB Group Inc. v. Centricut, Inc., 126 F. 3d 617, 625-26 (4th Cir. 1997). The Court then stated that "we thus had no trouble in concluding in ALS Scan that application of Calder in the internet context requires proof that the out of state defendant's Internet activity is expressly targeted at or directed to the forum state." Citing ALS Scan Inc., 293 F. 3d at

9

714, 315 F. 3d at 262-63. In determining whether the newspapers manifested an intent to direct their website content- which included articles concerning conditions in a Virginia prison- to a Virginia audience, the court stated the act of placing information on the Internet is not sufficient by itself to subject a person to personal jurisdiction in each state in which the information is accessed. 315 F. 3d at 263. "Something more than posting and accessibility is needed to 'indicate that the [newspapers] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state,' Virginia." (citation omitted.) The newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers." Id. The Court therefore examined the websites and their content and the offending article to determine whether they were directed at a Virginia audience. Notwithstanding that the specific article in question discussed the harsh conditions at the Virginia prison where the plaintiff, a Virginia resident, was warden, and the plaintiff was mentioned by name, the Court found that the focus of the articles was not about Virginia, but rather the articles were aimed at a Connecticut audience. 315 F. 3d at 263. The Court found that "the websites are not designed to attract or serve a Virginia audience." Id. at 263. Because the articles in question and websites were not posted on the internet with the manifest intent of targeting Virginia readers, the Court held that the newspaper defendants did not have sufficient Internet contacts with Virginia to permit the Virginia Court to exercise specific personal jurisdiction over them. Id. at 264-65.

In Zippo, the Court found personal jurisdiction existed over a defendant engaged in "electronic commerce" with Pennsylvania residents. The defendant operated an online news service which contracted with subscribers, collected information and received

payments from subscribers in the plaintiff's jurisdiction, all via the Internet. The defendant was "doing business over the Internet" with residents of the forum state, and entered into contracts through its website with 3,000 individuals and seven Internet access providers in the forum state. 952 F. Supp. at 1126.

In <u>Lewis v. Willough at Naples</u>, 311 F. Supp. 3d 731 (D. Md. 2018), the Court found that it lacks personal jurisdiction where the defendant's interactive website, accessible to any person located anywhere in the United States, provided a means for consumers to request and exchange information on the company and its services, but

> "Defendants do not appear to enter into contracts, solicit or receive funds, or otherwise conduct business through their website. Moreover, the limited interactive capabilities of Defendants' website are not directed at any particular audience, and they certainly are not directed 'into Maryland with the manifest intent of engaging in business or other interactions within that state in particular.' <u>Carefirst</u>, 334 F.3d at 401. This is simply not sufficiently targeted conduct by defendants such that they should 'reasonably anticipate being haled into court' in Maryland." Citing <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984). 311 F. Supp. 3d at 738.

Moreover, the Court rejected plaintiff's argument that the fact that he and other Maryland residents were treated in the defendant's facility in Florida provided the basis for jurisdiction, stating "[r]ather, it is the *Defendant's conduct* that must form the necessary connection with the forum state..." (emphasis in original) 311 F. Supp. at 736.

The plaintiff cites <u>Hare v. Richie</u>, No. CIV. ELH-11-3488, 2012 WL 3773116, (D. Md. Aug. 29, 2012) in support of his argument that the defendant's Internet activity is sufficient to establish the required minimum contacts with Maryland to allow Maryland courts to exercise personal jurisdiction. In <u>Hare v. Richie</u>, the Court applied the <u>Zippo</u> analysis and the <u>ALS Scan</u> test and found that the defendant directed electronic activity into Maryland with the manifest intent of engaging in business or other interactions within

11

Maryland. Id. at 12. The facts in Hare v. Richie are distinguishable from the present case. In Hare, although the defendant's website targeted a national and international audience, the Court found "more important, [ the defendant's] website specifically directs electronic activity toward Maryland through the 'Baltimore' section of its website, where all the content at issue is posted." Id. at 11. The defendant's website permitted the user to select a geographic section of the website in which to place content, which the court found demonstrates an intent to direct the content to users in that geographic area. Moreover, the Court found that the defendant manifested an intent to engage in interactions within Maryland by adding its own commentary to posts directed to Baltimore. Further, the Court found that "[L]ike the publisher at issue in Calder, [the defendant] must have known that the primary effects of the posts at issue would be felt in Maryland, because they were posted in the Baltimore section and concerned Maryland residents and events. Id. On these facts, the Court held that:

> "In sum, this is not a case where personal jurisdiction is based solely on the posting of information on a website that happens to be accessible in Maryland. Rather, this case involves information posted on a website that specifically targets a Maryland audience." Id. at 12.

The Court therefore found that the defendant possessed the requisite minimum contacts with Maryland to constitute purposeful availment. Id.

## Analysis

The Defendant's website is semi-interactive in that it requests viewers to post comments, subscribe, and shop the Fumble store. In the video in question, the announcer asks for responses to two questions:

12

1. "What's the weirdest thing you've accidentally glanced at on someone's iPhone?" and

2. "What's the raunchiest thing you've ever seen go down at a sporting event?"

Therefore, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs. Carefirst, 334 F. 3d at 400, quoting Zippo, 952 F. Supp. at 1126. "Adopting and adapting the Zippo model," ALS Scan set forth the three-part test to establish personal jurisdiction for internet based activity (discussed supra at p. 7). ALS Scan, 293 F. 3d at 714. As determined in the cases previously discussed, to establish internet based personal jurisdiction in Maryland, something more is required than placing information on the internet, the defendant must direct electronic activity into Maryland with the manifest intent of targeting Marylanders. ALS Scan, 293 F. 3d at 714; Carefirst, 334 F. 3d at 400; Young v. New Haven Advocate, 315 F. 3d at 264. Whether a website "intended to target Marylanders can be determined only from the character of the website." Carefirst, 334 F. 3d at 400.

The Court has considered the descriptions of the Shandy Media websites in the parties' respective memoranda, viewed several Shandy Media websites, and viewed the Fumble video that accompanied the Complaint that contains the alleged defamatory content. Shandy Media produces "OBSEV" which is a digital magazine that features a variety of entertainment and sports news. The online publication promotes three branded programs: "Hollyscoop" (an entertainment and celebrity guide), "the Fumble" (sports news), and "Obsev Food" (a food and dining guide). These programs are accessible on Facebook, Twitter, Instagram, YouTube, and Pinterest. There is no indication that the Shandy Media publications are targeted to a Maryland audience. The Fumble is an all

13

sports news outlet that has national stories about various sports and teams including college and professional sports. The Defendant, Angela Struck, states in the video to subscribe to the Fumble "for the hottest sports news and gossip;" it is not directed at Baltimore or Maryland but rather a national audience.

Unlike the website in Hare, Shandy Media's website and the Fumble do not have a "Baltimore" or "Maryland" section where content is posted either by the Defendants or by users who access the site and post a comment. The Shandy website targets a national audience, not a local audience, unlike the defendant's website in Hare that directs electronic activity to specific geographic locations as well as a national audience. The video of the fan at a Ravens game looking for prostitutes on his iPhone could have been taken of any fan at any NFL game in any city. The essence of the story was not about Baltimore or the Ravens, but rather the focus was on the fact that a football fan was looking at a website scrolling for prostitutes rather than watching the game. The Plaintiff acknowledges this in his memorandum when referring to the Fumble video, "but its focus was on the salacious video that had been taken by a fan at M&T Bank stadium in Baltimore of a man allegedly looking for prostitutes on his phone," (Plaintiff's Opposition to Shandy Defendants' Motion to Dismiss the Complaint p. 22) and in Plaintiff's First Amended Complaint (par. 19). The story was of equal interest to residents in any city watching the Fumble- it was not aimed at a Baltimore audience or Ravens' fans more than residents of any other state, and the story would have the same interest regardless of the city or state where it happened. The questions asking users to share their experiences of seeing the "weirdest" things on someone else's iPhone, or the "raunchiest" things at a game are not directed at persons or events located in Baltimore or Maryland.

Unlike Calder and Hare, the Defendants could not necessarily have known that the effect of the story would be felt in Maryland. The Plaintiff is not identified and as this was a stock photo retrieved from Getty Images, the Plaintiff was (at the time) unknown to the Defendants. There is no evidence or allegation that the Defendants knew the Plaintiff or knew that he was a Maryland State Senator, or that the story was aimed at the Plaintiff. The Defendant could not have known that the unidentified person in the photo (the Plaintiff) was a Maryland resident merely because he was wearing a Ravens jersey and, in fact, the photo of the Plaintiff used in the post was taken in London. Similarly, the man in the photo looking at his iPhone at the Ravens game is unidentified and his residence is unknown.

Furthermore, "*Calder* did not just involve out-of-state defendants who were aware that harm might be felt in the forum state of California. Rather, the defendants engaged in 'intentional, and allegedly tortious, actions ... *expressly aimed* at California,' and as a result, they could foresee harm being felt in that state." Fertel v. Davidson, No. CIV. CCB-13-2922, 2013 WL 6842890, at *5 (D. Md. Dec. 18, 2013), citing Calder v. Jones, 465 U.S. at 789-790 (emphasis added by Fertel). The Fumble video is not "expressly aimed" at Maryland. As previously discussed, the focus of the video is an incident in the stands that could have happened in any NFL stadium, and has equal interest to viewers in any city or state.

In determining whether the electronic activity was directed at the forum State, and whether there was a manifest intent to engage in interaction within the forum State, the Court in Carefirst considered evidence of online exchanges between the website and Maryland residents and the local character of the content of the website. 334 F. 3d at 401.

15

There is no "concrete evidence of online exchanges" between the Defendant, the Fumble and Maryland residents that might assist in determining whether the electronic activity was directed at Maryland. Although the Plaintiff presented evidence of the numbers of Maryland residents who accessed the website, there is no evidence of the number of Maryland residents who posted comments or the content of users' comments, or the volume of sales to Maryland residents from the Fumble store. Moreover, neither the Shandy websites nor the Fumble contain "local character" relating to Baltimore, and in fact, the Defendants argue the content relating to Hollywood celebrities targets residents in California.

Moreover, the interactive internet activity does not create a cause of action for the Plaintiff, and therefore the third part of the ALS Scan test is not satisfied by the interactive activity. (Internet activity directed into the state can give rise to personal jurisdiction when... "(3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." ALS Scan, 293 F. 3d at 714.) The Plaintiff's cause of action does not arise from and is not related to any user comments posted on the Shandy Media website, or sale of any Shandy Media merchandise from its online store. There is no evidence that subscriptions are sold by the Defendant or that Shandy Media otherwise entered contracts with subscribers in Maryland as in Zippo.

The Plaintiff has argued that he feels the effects of the video in Baltimore, where he resides and works. While this is certainly reasonable, the Fourth Circuit Court of Appeals concluded that "although the place that the plaintiff feels the alleged injury is plainly relevant to the [jurisdictional] inquiry, it must ultimately be accompanied by the

defendant's own [sufficient minimum] contacts with the state if jurisdiction... is to be upheld." Carefirst, 334 F. 3d at 401, Young v. New Haven Advocate, 315 F. 3d at 262.

In his *Supplemental Memorandum*, Plaintiff argues the significance that from January 1, 2017 to October 19, 2017, there were either 4,096,575 or 4,196,479 views on The Fumble's YouTube page from Maryland, depending on whether the number of views (4,096,575) included 99,904 YouTube Red views. (Plaintiff's Supplemental Memorandum p. 4, 5, and Ex. 1 attached). During the same time frame, however, there were over 29.3 million views from California (and 828,853 YouTube Red views), over 24.1 million views from Texas (and 687,791 Red Views), over 15 million views in New York (and 363,556 Red views), over 13.6 million views in Florida (and 338,699 Red Views) and over 10.2 million views in Illinois (and 273, 968 Red views). In fact, Maryland is only 14th in order of the number of views by location. (Exhibit 1 to Plaintiff's Supplemental Memorandum.) There is also a large disparity between the number of viewers in other states and Maryland on Obsev's other YouTube channels, with the number of Maryland views well below the number of views in a number of other states. (see Ex. 4 attached to Plaintiff's Supplemental Memorandum). In addition, the Plaintiff points out that "[d]uring that same period, there were also 332,756 views of Shandy Media's primary website, www.Obsev.com, in Maryland," citing exhibit 2 to its Supplemental Memorandum (Plaintiff's Supplemental Memorandum p.2). According to exhibit 2, however, Maryland ranks only 28th in order of number of views of the Defendants' website, with only 1.08% of the total views. This data tends to show that the Defendants do not target Maryland viewers with the content of their websites or stories, or specifically, The Fumble.

17

The Court finds that the Defendants' Fumble website and the Fumble video were not posted on the internet with the manifest intent of targeting Maryland residents. Moreover, the Plaintiff has not presented any evidence or content from any other outlet or website operated by the Defendants that targets Maryland residents, and therefore, the Defendants do not have sufficient minimum contacts with Maryland to allow Maryland to exercise personal jurisdiction under the Due Process Clause of the 14th Amendment.

## ORDER

Accordingly, for the reasons stated in this Opinion, it is this ___4th___ day of October 2018, by the Circuit Court for Baltimore County, hereby

ORDERED, that the *Motion to Dismiss the Complaint* filed by the Defendants, Shandy Media, Inc., Raymond Attipa, Tigranouhi Attipa, and Angela Struck, is hereby GRANTED and the Plaintiff's Complaint is hereby DISMISSED against the Defendants, Shandy Media, Inc., Raymond Attipa, Tigranouhi Attipa, and Angela Struck.

_____
H. Patrick Stringer, Judge

Copies were sent to: Timothy Maloney, Esq.
                       Jay Ward Brown, Esq.
                       Alexander Ziccardi, Esq.
                       Duncan Keir, Esq.
                       Jeffrey R. DeCaro, Esq.
                       Adam D. Perrelli, Esq.