1  Scott S. Humphreys (SBN 298021)
     humphreyss@ballardspahr.com
2  Jay Ward Brown (admitted *pro hac vice*)
     brownjay@ballardspahr.com
3  Alexander I. Ziccardi (admitted *pro hac vice*)
     ziccardia@ballardspahr.com
4  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 800
5  Los Angeles, CA  90067-2909
   Telephone: 424.204.4400
6  Facsimile: 424.204.4350

7  *Attorneys for Defendants*

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11

12  ROBERT A. ZIRKIN,                    Case No. 2:18-CV-09207-ODW-SS

13              Plaintiff,               **DEFENDANTS' NOTICE**
                                         **OF MOTION AND SPECIAL**
14       v.                              **MOTION TO STRIKE**
                                         **COMPLAINT (CAL. CODE CIV.**
15  SHANDY MEDIA, INC., a California     **PROC. § 425.16), OR**
    Corporation; ANGELA STRUCK,          **ALTERNATIVELY, TO DISMISS**
16  an individual; RAYMOND ATTIPA,       **(FRCP 12(B)(6)); MEMORANDUM**
    an individual; TIGRANOUHI ATTIPA,    **OF POINTS AND AUTHORITIES**
17  an individual; and DOES 1 through 100,
    inclusive;                           [Declarations of J. Ward Brown,
18                                        R. Attipa, T. Attipa, A. Struck,
              Defendants.                 M. Demeke, and J. Burrows, and
19                                        Request for Judicial Notice filed
                                          concurrently herewith]
20
                                          Hearing Date:  April 8, 2019
21                                        Time:          1:30 p.m.
                                          Courtroom:     5D
22                                        Judge:         Hon. Otis D. Wright, II

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on Monday, April 8, 2019, at 1:30 p.m., or as soon thereafter as counsel may be heard before the Honorable Otis D. Wright II, Courtroom 5D, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendants Shandy Media, Inc., Angela Struck, Raymond Attipa, and Tigranouhi Attipa (collectively, "Defendants") will and hereby do move this Court for an order striking Plaintiff's Complaint in its entirety pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq.*, or alternatively, for an order dismissing the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

This defamation lawsuit arises out of a digital video report ("Video Report") published in October 2017 by Defendant Shandy Media, Inc. ("Shandy"), a California-based news, sports and culture website publisher.  Plaintiff's claims arise out of Defendants' exercise of their free speech rights in connection with a matter of public interest.  As such, they are subject to California's anti-SLAPP statute, which requires Plaintiff, at the outset of this litigation, to establish a likelihood of succeeding on his claims.

Plaintiff cannot make that showing here.  First, Plaintiff's claims against the individual defendants – Raymond Attipa, Tigranouhi Attipa, and Angela Struck – should be stricken because none of those defendants published the Video Report in question.  Second, as a public official (specifically, a Maryland state senator), Plaintiff cannot prevail on his defamation claim because, under the First

---

[1] In an email from Plaintiff's Maryland counsel to undersigned counsel for Defendants sent at approximately 9:30 p.m. Eastern time last night, Feb. 27, 2019, counsel indicated that Plaintiff would be voluntarily dismissing his Complaint as against the three individual defendants and that such a notice of dismissal would be filed with the Court today.  As of close of business, Eastern Time, no such notice of voluntary dismissal has been filed and, so that they are not in default, this motion is filed on behalf of all defendants.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Amendment, he is required to (and cannot) prove by clear and convincing evidence that Defendants published the Video Report with actual malice.

Alternatively, Plaintiff's Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Plaintiff has not (and cannot) plausibly allege that any of the individual defendants published the Video Report in question, and he has not pleaded sufficient facts to support the essential element of his claim that Defendants acted with actual malice.

For the foregoing reasons, Defendants respectfully request that this Court (1) grant their Special Motion to Strike the Complaint (2), award to Defendants their costs and attorneys' fees, and (3) afford them such other and further relief as the Court may deem just and proper.

Alternatively, Defendants respectfully request that this this Court (1) grant their Motion to Dismiss the Complaint (2), dismiss the Complaint with prejudice, and (3) afford Defendants such other and further relief as this Court may deem just and proper.

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the concurrently filed Declarations of Jay Ward Brown, Raymond Attipa, Tigranouhi Attipa, Angela Struck, Matthew Demeke, and Jack S. Burows, and the Request for Judicial Notice; all pleadings, files and records in this action, and such other and further evidence and matters as the Court may consider at or prior to the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 that took place on November 8, 2018.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

DATED:  February 28, 2019

**BALLARD SPAHR LLP**


By:   /s/ Scott S. Humphreys
      Jay Ward Brown
      (admitted *pro hac vice*)
      Scott S. Humphreys
      (SBN 298021)
      Alexander I. Ziccardi
      (admitted *pro hac vice*)


*Attorneys for Defendants*

DEFENDANTS' NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE
OR ALTERNATIVELY TO DISMISS COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ ii

SUMMARY OF ARGUMENT .......................................................................... 1

FACTS ............................................................................................................... 3

A.    The Parties .......................................................................................... 3

B.    Creation Of The Video Report ........................................................... 3

C.    The Video Report ................................................................................ 5

D.    Shandy Promptly Removes The Video Report From Its Website ....... 7

E.    Plaintiff Files Suit In Maryland .......................................................... 7

F.    Plaintiff Re-Files In California State Court ........................................ 7

ARGUMENT ..................................................................................................... 8

I.     THE COMPLAINT SHOULD BE STRICKEN UNDER
       CALIFORNIA'S ANTI-SLAPP STATUTE .................................... 8

       A.    The Anti-SLAPP Statute Applies To Plaintiff's Claims ......... 9

       B.    Plaintiff Cannot Establish A Probability Of Prevailing On
             His Claims .............................................................................. 12

             1.    The individual defendants did not publish the Video
                   Report ........................................................................... 12

             2.    Plaintiff cannot prove that Defendants acted with
                   actual malice, *i.e.*, that they subjectively intended to
                   convey a false impression about him ........................... 13

       C.    Defendants Are Entitled To Their Attorneys' Fees And
             Costs ....................................................................................... 20

II.    ALTERNATIVELY, THE COMPLAINT SHOULD BE
       DISMISSED PURSUANT TO RULE 12(b)(6) ............................... 20

CONCLUSION ................................................................................................ 23

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..................................................................................... 14

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) ..................................................................... 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 21

*Barger v. Playboy Enterprises, Inc.*,
   564 F. Supp. 1151 (N.D. Cal. 1983) ........................................................... 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................... 21

*Biro v. Conde Nast* (*Biro I*),
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) .................................................... 22, 23

*Biro v. Conde Nast* (*Biro II*),
   807 F.3d 541 (2d Cir. 2015) ................................................................... 21, 22

*Bose Corp v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984) ..................................................................................... 14

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ..................................................................... 16

*Cross v. Cooper*,
   197 Cal. App. 4th 357 (2011) .................................................................. 10, 11

*D.A.R.E. America v. Rolling Stone Magazine*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000) ....................................................... 17

*Daniel v. Wayans*,
   8 Cal. App. 5th 367 (2017) ...................................................................... 11, 12

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ................................................................... 14, 16

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

ii

*Dodds v. American Broadcasting Co.*,
    145 F.3d 1053 (9th Cir. 1998) ...................................................................15, 18

*Doe v. Gangland Producitons, Inc.*,
    730 F.3d 946 (9th Cir. 2013) ...........................................................................9

*Durando v. Nutley Sun*,
    209 N.J. 235, 37 A.3d 449 (2012) ..................................................................20

*Eastwood v. National Enquirer, Inc.*,
    123 F.3d 1249 (9th Cir. 1997) ...................................................................15, 19

*Faxon v. Michigan Republican State Central Committee*,
    244 Mich. App. 468, 624 N.W.2d 509 (2001) ...............................................14

*Greater Los Angeles Agency on Deafness, Inc. v. Cable News*
    *Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) .....................................................................8, 10

*Hall v. Ruggill*,
    226 F. App'x 676 (9th Cir. 2007) ...................................................................12

*Hilton v. Hallmark Cards*,
    599 F.3d 894 (9th Cir. 2010) ...........................................................................9

*Jarrow Formulas, Inc. v. LaMarche*,
    31 Cal. 4th 728 (2003) .....................................................................................9

*Jones v. Scripps Media, Inc.*,
    No. 16-cv-12647, 2019 WL 265280 (E.D. Mich. Jan. 18, 2019) ...................20

*Khai v. County of Los Angeles*,
    730 F. App'x 408 (9th Cir. 2018) ................................................................2, 20

*Lieberman v. KCOP Television, Inc.*,
    110 Cal. App. 4th 156 (2003) .........................................................................10

*M.G. v. Time Warner, Inc.*,
    89 Cal. App. 4th 623 (2001) ...........................................................................11

*Makaeff v. Trump University, LLC*,
    26 F. Supp. 3d 1002 (S.D. Cal. 2014) ............................................................15

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

*Manufactured Home Communities, Inc. v. County of San Diego*,
    655 F.3d 1171 (9th Cir. 2011) ............................................................. 8

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ............................................................. 18

*Marcone v. Penthouse International Magazine For Men*,
    754 F.2d 1072 (3d Cir. 1985) ............................................................ 20

*Matson v. Dvorak*,
    40 Cal. App. 4th 539 (1995) ......................................................... 12, 13

*Mayfield v. National Association for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ............................................................. 21

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) .......................................................... 21

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) ........................................................... 21

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) .......................................................... 9, 12

*Montandon v. Cox Broadcasting Corp.*,
    45 Cal. App. 3d 932 (1975) ............................................................... 17

*Newton v. National Broadcasting Co.*,
    930 F.2d 662 (9th Cir. 1990) ...................................................... 2, 15, 18

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ........................................................... 10

*Osmond v. EWAP, Inc.*,
    153 Cal. App. 3d 842 (1984) ............................................................. 13

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ............................................................. 21

*Planned Parenthood Federation of America, Inc. v. Center for
    Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) ............................................................. 12

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

iv

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ........................................................... 17

*Resolute Forest Products, Inc. v. Greenpeace International*,
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) ............................................. 21

*Robertson v. Rodriguez*,
    36 Cal. App. 4th 347 (1995) ................................................................ 12

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*,
    48 Cal. 3d 341 (1989) ......................................................................... 17

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ................................................................ 9

*Schatz v. Republican State Leadership Committee*,
    669 F.3d 50 (1st Cir. 2012) ................................................................ 21

*Secord v. Cockburn*,
    747 F. Supp. 779 (D.D.C. 1990) ......................................................... 16

*Sutter Health v. Unite Here*,
    186 Cal. App. 4th 1193 (2010) ........................................................... 14

*Tague v. Citizens for Law & Order, Inc.*,
    75 Cal. App. 3d Supp. 16 (1977) ........................................................ 13

*Thomas v. Quintero*,
    126 Cal. App. 4th 635 (2005) ............................................................. 11

*Verizon Delaware, Inc. v. Convad Communications Co.*,
    377 F.3d 1081 (9th Cir. 2004) .............................................................. 8

*Young v. CBS Broadcasting, Inc.*,
    212 Cal. App. 4th 551 (2012) ............................................................. 15

**Statutes**

28 U.S.C. § 1332(a) ................................................................................. 8

California Civil Procedure Code § 425.16 ................................ 1, 8, 9, 10, 12

MD Code Criminal Law § 11-306(a)(5) .................................................. 11

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE
OR ALTERNATIVELY TO DISMISS COMPLAINT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>SUMMARY OF ARGUMENT</u>

Plaintiff, a Maryland state senator, filed this action for defamation based on an online video ("Video Report") published by Defendant Shandy Media, Inc. ("Shandy"). The Video Report concerned a viral iPhone recording that had already been published on the internet before Shandy published its own story about the iPhone recording—a recording that appears to show a Baltimore Ravens fan soliciting prostitutes from his phone during an NFL game. The Video Report satirically comments on the recording, while also inviting viewers to submit their own stories of inappropriate stadium behavior and "strange" things they have seen on other people's cell phones.

Plaintiff's lawsuit falls squarely within the California anti-SLAPP statute, California Civil Procedure Code § 425.16, which permits courts to promptly dismiss lawsuits that challenge a defendant's right of free expression on a matter of public interest. *See* Cal. Civ. Proc. Code § 425.16 (e)(3) & (e)(4). The anti-SLAPP statute imposes a considerable burden a defamation plaintiff, requiring him at the outset of the litigation to prove a likelihood of succeeding on his claims, which this Plaintiff is unable to do.

Plaintiff's claim is based exclusively on a four-second portion of the Video Report, in which a stock photograph of Plaintiff at a Raven's game (the "Photograph") is displayed. Plaintiff alleges in his Complaint that inclusion of the Photograph in the Video Report creates the false impression that Plaintiff and the man soliciting prostitutes were one and the same.

Plaintiff, however, must do more than prove that the Video Report created such a false impression. As a public official (specifically, a Maryland state senator), the First Amendment requires that Plaintiff prove by clear and convincing evidence that Defendants published the Video Report with "actual malice," *i.e.*, that Defendants *subjectively intended* to create the false impression that he was

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

soliciting prostitutes.  *See Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 679 (9th Cir. 1990).  Plaintiff must do so even if, as he suggests, the false impression is "clear and inescapable" from the Video Report itself.  *See id.*

Plaintiff cannot make that showing here.  The evidence conclusively establishes that any false impression about Plaintiff created by the Video Report was, at most, an honest mistake, one that Shandy addressed by promptly withdrawing the Video Report once the error was brought to its attention.  The record shows that:

(1)    At the time of publication, none of the individuals involved in creating the Video Report intended to create the impression that the man in the Photograph was the person in the iPhone recording;

(2)    The author of the Video Report's script intended for a different image to appear during the portion of the Video Report that ultimately included the Photograph; and

(3)    The Photograph's inclusion in the Video Report was intended merely to depict football fans generally, and not any fan in particular.

Simply put, this is a case of an honest editing error, made during a tight production schedule, where several staff members each separately performed parts of the job of producing the Video Report.  While that error at least arguably may amount to negligence, it plainly does not constitute actual malice.  The Complaint should therefore be stricken under the anti-SLAPP statute, and Defendants should be awarded attorneys' fees and costs.  *Khai v. Cty. of Los Angeles*, 730 F. App'x 408, 411 (9th Cir. 2018) ("Attorney's fees are mandatory for a successful anti-SLAPP motion.") (citing Cal. Civ. Proc. Code § 425.16(c)(1)).

Moreover, even if the anti-SLAPP statute did not apply (it does), Plaintiff's Complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).  Under the standard laid out in *Iqbal*/*Twombly*, Plaintiff must allege **specific facts** that, if true, would raise the **plausible** inference that Defendants subjectively

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

2

intended to defame him.  Plaintiff's Complaint fails in this regard: it rests on wholly conclusory allegations of actual malice, without providing any specific facts that could plausibly support an inference that Defendants intended to convey a defamatory impression about him.  This type of bare-bones pleading is insufficient as a matter of law.

<u>FACTS</u>

**A.    The Parties.**

Plaintiff is a Maryland resident who currently serves as a Maryland state senator, a position he held at the time the Video Report was published.  *See, e.g.*, Compl. ¶ 2, Dkt. No. 1-1.

Shandy is a California-based media company.  Compl. ¶ 14.  Shandy operates a website – obsev.com – that publishes articles and video content touching on a wide array of topics, including movies, music, food, and celebrity culture.  *See id.*; *see also* R. Attipa Decl. ¶ 12.  Shandy also operates "The Fumble," an online publication focused exclusively on sports-related content.  *See* Compl. ¶ 14.  Defendants Raymond and Tigranouhi Attipa are the co-founders of Shandy.  *See* Compl. ¶¶ 16-17.  Raymond Attippa is Shandy's CEO, and Tigranouhi Attipa serves as the company's Managing Partner.  *See id*.  Defendant Angela Struck is a California resident who, as an independent contractor, has appeared as an on-air personality for Shandy's online video content.  *See* Struck Decl. ¶ 2.

**B.    Creation Of Video Report**

On the morning of October 16, 2017, Matthew Demeke, who at the time was a producer for Shandy's The Fumble, came across a story on the sports news website www.bustedcoverage.com.  *See* Demeke Decl. ¶ 4.  The story concerned an iPhone recording made at a Baltimore Ravens NFL game, which appeared to show a Ravens fan in the stands soliciting prostitutes on his cell phone.  *See id*.  Mr. Demeke then assigned the story to Ms. Struck.  *See id*. ¶ 5.  He first asked her

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

to write a script about the "sexting" incident, which could then be used in a Shandy video report.  *See id.* ¶ 6.

In response to Mr. Demeke's request, Ms. Struck began to write the script for what was to become the Video Report entitled "Ravens Fan Gets Caught Looking For Prostitutes on Craigslist During Game."  *See* Struck Decl. ¶ 5. After completing the script, Ms. Struck emailed it to Mr. Demeke at 10:28 a.m. *See id.* ¶ 7.  Ms. Struck's script did not mention or refer to Plaintiff.  *See id.* ¶ 6.

Shortly after receiving the script from Ms. Struck, Mr. Demeke instructed Ms. Struck to record the script.  *See id.* ¶ 8.  Ms. Struck complied, and at approximately 11:00 a.m., she read the script on camera from a teleprompter. *See id.* ¶ 9.

Next, Ms. Struck downloaded the iPhone recording of the sexting incident posted on www.bustedcoverage.com.  *See id.* ¶ 10.  Then, she and Mr. Demeke visited the Getty Images website to download licensed stock images to be used in the Video Report.  *See id.* ¶ 11.  Following past practice, Ms. Struck and Mr. Demeke searched for stock images that related to any proper noun used in the script, including "Ravens," "Joe Flacco," and "Ravens Fan."  *See id.* ¶ 13.  For the term "Ravens fan," Ms. Struck and Mr. Demeke downloaded approximately ten images.  One of those images happened to be the Photograph of Plaintiff.  *See id.* ¶ 14.

Ms. Struck then saved the following files to a digital folder on Shandy's server:  (1) her recording of the script, (2) the iPhone recording from www.bustedcoverage.com, and (3) the Getty images, including the Photograph. *See* Struck Decl. ¶¶ 17, 18, 19.  After that point, Ms. Struck had no further role in creating the Video Report.  *See id.* ¶¶ 21-24.

Responsibility for the project then passed to Jack Burrows, an independent contractor who edited videos for Shandy between August 2017 and October 2017. *See* Burrows Decl. ¶ 3.  As a freelance editor, Mr. Burrows was responsible for

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

4

assembling the various "assets" associated with the Video Report.  *See id*. ¶ 7.
These assets included the iPhone recording of the fan soliciting prostitutes, the
video roll of Ms. Struck reading the script from the teleprompter, and finally, the
various stock images Mr. Demeke and Ms. Struck had selected for possible
inclusion in the Video Report.  *See id*.

Regarding the stock images in particular, Mr. Burrows was tasked with
selecting some of those images from the computer folder and placing them into the
Video Report.  *See id*. ¶ 9.  Without consulting Ms. Struck or Mr. Demeke,
Mr. Burrows selected several images to appear in the Video Report, including two
stock images of Ravens fans.  *See id*. ¶ 12; Struck Decl. ¶ 21; Demeke Decl. ¶ 18.
One of those images was the Photograph.  *See* Burrows Decl. ¶ 12.

At the time he edited the Video Report, Mr. Burrows did not intend to create
the impression that the man in the Photograph was the same person shown texting
prostitutes on his cell phone; nor was he aware that the Video Report created such
an impression.  *See id*. ¶¶ 18, 19.  Instead, consistent with his intentions,
Mr. Burrows believed that the images were being used to depict the Ravens fan
base generically, as opposed to any single Ravens fan in particular.  *See id*. ¶ 20.

After Mr. Burrows edited the Video Report, it was posted on The Fumble
website.  *See* Demeke Decl. ¶ 21.  The Video Report was one of several videos
Mr. Burrows edited that day.  *See* Burrows Decl. ¶¶ 22-23.  Like Mr. Demeke and
Ms. Struck, Mr. Burrows worked under tight production schedules, which required
him to edit anywhere from six to eight video reports in a single day.  *See id*.
Mr. Burrows was therefore not able to devote significant time to reviewing any
single video report for potential errors after he had completed editing each report.
*See* Burrows Decl. ¶ 23.

## C.    The Video Report

The Video Report begins with Ms. Struck introducing herself and
encouraging viewers to subscribe to The Fumble for updates on sports news and

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

gossip.  *See* Brown Decl., Ex. A.  Next, Ms. Struck recaps a recent NFL game in which the Baltimore Ravens lost to the Chicago Bears 27-24.  During this portion of the Video Report, images from the game are displayed on the screen.  *See id.*

Ms. Struck then states that the game "apparently [] wasn't enough to hold every fan's attention.  Most importantly this gray haired Ravens fan who was caught creeping for prostitutes during the game."  At this point in the Video Report, an image of several Ravens fans standing in a football stadium pans across the screen.  Ms. Struck then asks viewers, "what is the weirdest thing you've accidentally glanced at on someone's iPhone?"

Ms. Struck continues to report on the sexting incident, opining that "this fan needs to be a bit more DL—he's holding up the phone for all the world to see . . .."  Consistent with the script, it was at this point that Ms. Struck intended for the Video Report to display a still image from the iPhone recording of the sexting incident.  *See* Struck Decl. ¶ 22.  Instead of that image, however, the Photograph was inadvertently displayed in the Video Report at this point, which showed Plaintiff in the foreground, and other fans in the background.  *See* Brown Decl., Ex. A.

After the Photograph disappears from the screen, Ms. Struck states, "unfortunately for [the fan] the person sitting behind him is active on social media.  Check out the video he recorded and posted online with the caption 'Craigslist New Target Demographic is Old White Ravens Fans.'"  *See id.*  The Video Report then includes the iPhone recording itself, which appears to show a fan soliciting prostitutes on his phone.  *See id.*  After describing the iPhone recording, Ms. Struck concludes the Video Report by asking viewers "what is the raunchiest thing you've ever seen go down at a sporting event?"  *See id.*

At the time of publication, neither Ms. Struck nor Mr. Demeke nor Mr. Burrows were aware that the Video Report might create the impression that the man in the foreground of the Photograph was the same person seen soliciting

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

6

prostitutes in the iPhone recording.  *See* Struck Decl. ¶¶ 22- 25; Demeke Decl. ¶¶ 22, 23; Burrows Decl. ¶¶ 18, 19.

**D.     Shandy Promptly Removes The Video Report From Its Website**

On October 18, 2017, Plaintiff and his representatives complained to Shandy about the Video Report.  *See* R. Attipa Decl. ¶ 11.  In response to those complaints, Shandy promptly and voluntarily removed the Video Report from its website, YouTube channel, and social media pages.  *See id.*

Neither of Shandy's founders – Raymond and Tigranouhi Attipa – had any role in creating the Video Report.  *See id.* ¶ 3; T. Attipa Decl. ¶ 3.

**E.     Plaintiff Files Suit In Maryland**

Plaintiff first initiated this lawsuit by filing a complaint in the Maryland Circuit Court for Baltimore County on October 19, 2017.  *See* Notice of Removal Ex. 4, Dkt. No. 1-4.  Plaintiff then filed an amended complaint with the Maryland court on January 26, 2018.  *See id.* Ex. 5, Dkt. No. 1-5.  Plaintiff claimed in his pleadings in the Maryland Action that the Video Report defamed him and cast him in a false light.  *See id.*

Defendants moved to dismiss the Maryland Action, arguing that they were not subject to personal jurisdiction in Maryland.  *See id.* Ex. 6, Dkt. No. 1-6.  On October 4, 2018, the Maryland court granted the motion and dismissed Defendants from the lawsuit.  *See id.*  Plaintiff moved for reconsideration of that order, but the Maryland court re-affirmed its prior ruling. *See* Brown Decl., Ex. B.

**F.     Plaintiff Re-Files In California State Court**

On October 16, 2018, Plaintiff filed the present Complaint in California state court.  The Complaint purports to state claims for defamation and false light.  The crux of the Complaint is that the Video Report created the "false image" that the person in the Photograph (*i.e.*, Plaintiff) and the person in the iPhone recording "are one and the same."  *See* Compl. ¶ 8.  Plaintiff further alleges that the News

Report injured his "reputation, character, and profession," in part because it was seen by Plaintiff's "constituents in Maryland." *See* Compl. ¶¶ 59-62.

On October 26, 2018, Defendants removed the lawsuit from state court to this Court on the basis of diversity jurisdiction. *See* Notice of Removal, Dkt. No. 1; 28 U.S.C. § 1332(a).  On February 14, 2019, this Court denied Plaintiff's motion to remand this action back to state court.  Dkt. No. 22.

Defendants now move to strike the Complaint pursuant to California's anti-SLAPP statute, *see* Cal. Civ. Proc. Code § 425.16, or alternatively, to dismiss the Complaint for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

## I. THE COMPLAINT SHOULD BE STRICKEN UNDER CALIFORNIA'S ANTI-SLAPP STATUTE

More than two decades ago, the California Legislature passed the anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16 *et seq*., declaring that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process." *Id*. § 425.16(a).

Since then, the Ninth Circuit repeatedly has recognized that the California anti-SLAPP statute applies in federal court, where it can be used to obtain "early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Verizon Del., Inc. v. Convad Commc'ns Co.*, 377 F.3d 1081, 1090 (9th Cir. 2004) (holding that California anti-SLAPP statute applied to plaintiff's state law claims filed in federal court); *see also Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 421 (9th Cir. 2014).

The Ninth Circuit also has followed the Legislature's explicit directive that the statute "shall be construed broadly."  Cal. Civ. Proc. Code § 425.16(a); *Manufactured Home Cmtys., Inc. v. Cty. of San Diego*, 655 F.3d 1171, 1176

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

8

(9th Cir. 2011). The statute applies to all claims arising from expressive activities, including claims for defamation and false light. *See, e.g.*, *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 744-45 (2003) (citations and quotations omitted); *see also Sarver v. Chartier*, 813 F.3d 891, 906-07 (9th Cir. 2016) (applying statute to defamation and false light claims).

Under the anti-SLAPP statute, any "cause of action . . . arising from any act . . . in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Cal. Civ. Proc. Code § 425.16(b)(1).  A court considering a motion to strike under the anti-SLAPP statute must thus engage in a two-part inquiry: "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech."  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (internal marks omitted).  "Second, if the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim."  *Hilton v. Hallmark Cards*, 599 F.3d 894, 903 (9th Cir. 2010) (internal marks and alterations omitted).  If the plaintiff fails to carry this burden, the cause of action must be dismissed with prejudice and the defendant must be awarded attorneys' fees and costs.

## A.    The Anti-SLAPP Statute Applies To Plaintiff's Claims

The first question -- whether the anti-SLAPP statute applies to a claim -- is itself determined by a two-prong inquiry:  Specifically, the defendant must show that (1) its actions were in furtherance of the defendant's right of free speech, and (2) that the speech at issue was in connection with a public issue or an issue of public interest.  *Doe v. Gangland Prods., Inc*., 730 F.3d 946, 953 (9th Cir. 2013) (citing Cal. Civ. Proc. Code § 425.16(a), (e)(4)).  Both of these requirements are satisfied here.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

9

First, it is well-settled that a defendant's publication of an online news video qualifies as an act in furtherance of its free speech rights. *E.g.*, *Greater Los Angeles Agency on Deafness*, 742 F.3d at 423.

Second, the subject matter of the Video Report was plainly "in connection with a public issue or a subject of public interest." Consistent with the Legislature's instruction that the statute be given broad construction, *see* Cal. Civ. Proc. Code § 425.16(a), "courts have broadly construed 'public interest,'" *Cross v. Cooper*, 197 Cal. App. 4th 357, 372 (2011) (subsequent history omitted).

Importantly, "the issue need not be 'significant;'" "it is enough that it is one in which the public takes an interest." *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008). As Plaintiff concedes in his Complaint, the public exhibited significant interest in the iPhone recording that was the subject of the Video Report. Compl. ¶¶ 43, 44. Even before publication by Shandy of the Video Report, the iPhone recording had already gone viral on social media, and had appeared in an October 16, 2017 news report on www.bustedcoverage.com, a website devoted to newsworthy sports events. *See* Demeke Decl. ¶ 4. The iPhone recording had also appeared on other news websites, including www.dailysnark.com, www.brobible.com, and www.totalprosports.com, as well as the Barstool Sports Twitter feed, "Laces Out." *See* Request for Judicial Notice; *see also* Brown Decl., Ex. C. These facts alone satisfy the public interest requirement. *Nygard*, 159 Cal. App. 4th at 1042 ("an issue of public interest . . . is *any issue in which the public is interested*").[2]

Moreover, "[n]ews reports concerning current criminal activity," including unlawful sexual conduct, "serve important public interests." *See Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 164 (2003) (report on unlawful

---

[2] The fact that the iPhone appeared on other websites demonstrates that it had garnered public interest separate and independent from Shandy's own publication. This is not a case, therefore, in which the defendant merely communicated a private matter to a large group of people.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

distribution of controlled substances satisfied public interest requirement); *see also M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629 (2001) (report concerning child molestation satisfied public interest requirement); *Cross*, 197 Cal. App. 4th at 374-83 (disclosure of registered sex offender status satisfied public interest requirement).  Soliciting prostitution is a crime in Maryland.  MD Code Crim. Law § 11-306(a)(5).  And, more to the point, this was no ordinary case of solicitation: it occurred at an NFL stadium, in the middle of a football game, in front of thousands of fans.  It is unsurprising that such an act would generate considerable public interest.

Finally, it is well-settled that the public interest requirement will be met where the challenged speech encourages further public discussion.  *See Thomas v. Quintero*, 126 Cal. App. 4th 635, 661 (2005).  The Video Report does just that, expressly asking viewers to submit their own stories of inappropriate stadium behavior and also to comment on the occurrence of "accidentally glanc[ing] at someone's iPhone."  *See* Brown Decl., Ex. A.[3]

For all these reasons, the public interest requirement is satisfied and the anti-SLAPP statute applies to Plaintiff's claims.[4]

---

[3] In the age of ubiquitous cell phone use, the phenomenon of witnessing deeply private moments on a stranger's phone has generated significant public interest and discussion.  *See, e.g.*, Heather Schwedel, *In Defense of Peeking at a Stranger's iPhone Screen*, SLATE (May 10, 2018), https://slate.com/technology/2018/05/in-defense-of-peeking-at-a-strangers-iphone-screen.html; Mat Honan, *Eyes Forward, A--hole! Quit Looking at My Screen*, GIZMODO (June 24, 2011), https://gizmodo.com/eyes-forward-asshole-quit-looking-at-my-screen-5815018; John Herrman, *Why You Can't Stop Looking at Other People's Screens*, NEW YORK TIMES (Oct. 10, 2018), https://www.nytimes.com/2018/10/10/style/why-you-cant-stop-looking-at-other-peoples-screens.html; Sam Blum, *This Incredibly Nosy Man Cannot Stop Snooping on Other People's Phones*, THRILLIST (June 24, 2017), https://www.thrillist.com/news/nation/man-on-nyc-subway-cant-stop-snooping-on-peoples-phones.  *See also* Request for Judicial Notice, filed concurrently herewith.

[4] The Video Report's comical or satirical tone does not deprive it of protection under the anti-SLAPP statute.  *Daniel v. Wayans*, 8 Cal. App. 5th 367, 387-88 (2017) (holding that comical internet post met public interest requirement and observing that "the bar for an anti-SLAPP defendant to overcome [in this regard] is not a particularly demanding one") (citing *Kronemyer v. Internet Movie Database, Inc.*, 150 Cal. App. 4th 941 (2007)).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

### B.    Plaintiff Cannot Establish A Probability Of Prevailing On His Claims

Because the anti-SLAPP statute applies to Plaintiff's claims, Plaintiff bears the burden to establish a *probability* that he *will prevail* on his claims. *See* Cal. Civ. Proc. Code § 425.16(b)(1).  This burden is substantial.  As the Ninth Circuit has explained, a plaintiff will satisfy its burden only of it produces "sufficiently substantial evidence [] to support a judgment for him or her."  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (citing *Metabolife Int'l, Inc. v. Warnick*, 264 F.3d 832, 839 (9th Cir. 2001)).  Therefore, Plaintiff must adduce "competent, admissible evidence"[5] showing that he or she has a legally sufficient claim, *Mindys Cosmetics*, 611 F.3d at 599, and must "meet the defendant's constitutional defenses[.]" *Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359 (1995).

As explained below, Plaintiff cannot meet his burden for several reasons:

### 1.    The individual defendants did not publish the Video Report.

Plaintiff's claims against the three individual defendants – Raymond Attipa, Tigranouhi Attipa, and Angela Struck – must be stricken because none of those Defendants actually published the Video Report.  To succeed on a defamation claim, the plaintiff must show that the defendant published a defamatory statement to a third-party.  *See, e.g.*, *Hall v. Ruggill*, 226 F. App'x 676, 677 (9th Cir. 2007) (citing Restatement (Second) of Torts § 577 (2006)); *see also Matson v. Dvorak*, 40 Cal. App. 4th 539, 549 (1995) ("The general rule for defamation is that only one 'who takes a *responsible* part in the publication is liable for defamation.'") (citation omitted).  The same rule applies to false light claims.  *E.g.*, *Wayans*, 8 Cal. App. 5th at 397 (false light claim requires that defendant "give[]

---

[5] Defendants' anti-SLAPP motion is challenging the factual sufficiency of Plaintiffs' claims, offering evidentiary support for why he cannot prevail.  As such, Plaintiff must submit factual evidence in support of his claims, and not just rely on the allegations of his pleadings. *See Planned Parenthood*, 890 F.3d at 834-35.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

publicity" to challenged statements).  Under this basic principle, none of the individual defendants can be held liable for any false impression created created by the placement of the Photograph in the Video Report.

Ms. Struck was merely responsible for drafting the script and selecting digital assets for possible inclusion in the Video Report.  *See* Struck Decl. ¶¶ 5, 11, 21.  She was not in any way involved in the actual editing of the Video Report or the placement of the Photograph in it.  *See id*.  In California, "the author of an originally non-defamatory statement is not responsible for modifications or alterations, made without his knowledge, which make the statement libelous."  *See Osmond v. EWAP, Inc.*, 153 Cal. App. 3d 842, 852 (1984).  That is precisely what happened here.  For that reason, Ms. Struck cannot be held liable as a matter of law, even assuming Plaintiff could make out a claim against Shandy.

The same is true for the Attipas.  They are businesspeople who had no role whatsoever in creating or publishing the Video Report.  *See Dvorak*, 40 Cal. App. 4th at 549 ("business manager" of newspaper cannot be held liable for defamation where he had no role in preparation of challenged article) (citation omitted).  The claims against both of them therefore should be stricken.[6]

**2.     Plaintiff cannot prove that Defendants acted with actual malice, *i.e.*, that they subjectively intended to convey a false impression about him.**

Plaintiff is a Maryland state senator, a position he also held at the time the Video Report was published.  He therefore is a public official for the purposes of his claims.  *See, e.g.*, *Tague v. Citizens for Law & Order, Inc.*, 75 Cal. App. 3d

---

[6] It bears emphasis that, prior to filing the Complaint in this Court, Plaintiff and his counsel knew that Ms. Struck, Mr. Attipa, and Ms. Attipa had played no role in deciding where the Photograph appeared in the Video Report and that the Attipas had played no role of any kind in the Video Report:  Each of them tendered affidavits in the Maryland lawsuit establishing these facts, *and* Plaintiff took the deposition of Shandy's corporate designee in that action, and all of the evidence demonstrated that these individual defendants played no role in publication of the Video Report.  *See* Brown Decl., Ex D.  Simply put, Plaintiff and his counsel have no good faith basis whatsoever for having named the three of them as defendants in this action, which makes an award to them of their attorney's fees pursuant to the anti-SLAPP statute particularly appropriate.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Supp. 16, 22 (1977) ("'public official' designation applies at the very least to those among the hierarchy of government employees who have or appear to the public to have a substantial responsibility for or control over the conduct of government affairs") (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966)); *see also Faxon v. Michigan Republican State Cent. Comm.*, 244 Mich. App. 468, 512, 624 N.W.2d 509, 512 (2001) (state senator was public official for purposes of his defamation claims). Indeed, Plaintiff pleads in his Complaint his status as a "highly respected member of the General Assembly," *see* Compl. ¶ 3, and that he was identified in the Video Report by his "constituents in Maryland," *see* Compl. ¶ 62.

Because he is a public official, Plaintiff's defamation and false light claims must be dismissed unless he can prove by clear and convincing evidence that Defendants published the Video Report with "actual malice." *See, e.g.*, *Bose Corp v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511 (1984); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986); *see also, e.g.*, *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018) (requirement of proof of actual malice also applies to false light claims), *review denied*, No. 18-453, --- S. Ct. ---, 2019 WL 113121 (2019).

"Actual malice" is a First Amendment term of art in defamation law, and it exists only where "the defendant *realized* that his statement was false or that he *subjectively* entertained serious doubt as to the truth of his statement" at the time he made it. *Bose Corp.*, 466 U.S. at 511 n.30 (emphasis added). The actual malice inquiry is not an objective one; the focus instead is exclusively on the defendant's subjective state of mind at the time of publication. *Id.* at 512. To demonstrate actual malice, the plaintiff must prove that the defendant was "actually aware the contested publication was false," or acted "with reckless disregard to whether it was true or false." *Sutter Health v. Unite Here*, 186 Cal. App. 4th 1193, 1210-11 (2010). Reckless disregard is also a purely subjective inquiry: "it is not measured

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

14

by what a reasonably prudent person would have published." *Id*. Thus, a showing of "gross or even extreme negligence" is insufficient. *Id*.

Given this considerable evidentiary burden, California courts frequently grant anti-SLAPP motions on actual malice grounds. *See, e.g.*, *Makaeff v. Trump University, LLC*, 26 F. Supp. 3d 1002, 1013-14 (S.D. Cal. 2014); *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1169 (2004); *Young v. CBS Broad., Inc.*, 212 Cal. App. 4th 551 (2012).

The actual malice inquiry takes on an additional layer in this case because Defendants never actually *stated* that Plaintiff was soliciting prostitutes at the Ravens game. Instead, as alleged in the Complaint, Defendants displayed a stock image of Plaintiff while describing the sexting incident, thereby creating the *false implication* that he was soliciting prostitutes. *See, e.g.*, Compl. ¶ 8 ("[d]efendants falsely created the image that this individual and Mr. Zirkin are one and the same"); *id.* ¶ 41 (Defendants "published a video portraying Mr. Zirkin and the man in the original video as one and the same"). In a "defamation by implication" case such as this one, actual malice will exist only where the defendant *intended* to convey the false implication. *See, e.g.*, *Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 681 (9th Cir. 1990); *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997) ("there is no actual malice where journalists unknowingly mislead the public.")

This, too, is a subjective inquiry: Courts must ask whether the defendant *actually intended* to convey the defamatory implication, not whether a "reasonable viewer" would have believed the defendant intended to do so. *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1064 (9th Cir. 1998). Thus, an unintended implication can never be actionable by a public official, even where the implication is "clear and inescapable" from the report itself. *Newton*, 930 F.2d at 679 (finding no actual malice in implication case even where defendant should have known of false implication).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

For that reason, plaintiffs alleging defamation by implication must make an "especially rigorous" showing of actual malice, and Plaintiff must prove by clear and convincing evidence that the defendant subjectively intended to convey a false implication.  *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993); *see also De Havilland*, 21 Cal. App. 5th at 870.

Here, as demonstrated below, Plaintiff is unlikely to make this showing with respect to any Defendants—indeed, he cannot as a matter of law.  The anti-SLAPP motion should therefore be granted.

**<u>The individual defendants</u>**

The Complaint should be stricken as against each of the individual defendants because Plaintiff cannot demonstrate that any of them personally acted with actual malice in connection with the Video Report.  *See, e.g.*, *Secord v. Cockburn*, 747 F. Supp. 779, 787 (D.D.C. 1990) ("Actual malice must be proved separately with respect to each defendant") (citing *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)).  As for Ms. Struck, she merely selected the Photograph of Plaintiff for *possible* inclusion in the Video Report.  *See* Struck Decl. ¶ 11, 21.  She had no say in whether the Photograph would *actually* be used in the Video Report, and certainly had no role whatsoever in placing the Photograph into the Video Report in the juxtaposition that created the allegedly defamatory implication.  *See id.* ¶ 20.

Similarly, the evidence indisputably demonstrates that the Attipas had no role whatsoever in creating the Video Report.  *See* R. Attipa Decl. ¶ 3; T. Attipa. ¶3.  In fact, they had no knowledge of the Video Report until Plaintiff brought it to Shandy's attention.  *See* R. Attipa Decl. ¶4; T. Attipa. ¶4.  *Secord*, 747 F. Supp. at 787.

Under these facts, Plaintiff cannot even establish negligence on the part of the individual defendants, let alone meet the more rigorous actual malice standard that applies to his claims.  *See, e.g., Montandon v. Cox Broadcasting Corp.*, 45

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Cal. App. 3d 932, 936 (1975) (holding, without needing to decide the applicable degree of fault, that defendants could not be liable for edits to magazine made by third party).

### Shandy

There are two principal reasons why Plaintiff is unable to prove by clear and convincing evidence that the corporate defendant, Shandy, acted with actual malice.  First, Mr. Burrows, the editor who placed the Photograph in the Video Report, was not an employee of Shandy.  *See* R. Attipa Decl. ¶ 6.  Instead, he was an independent contractor.  *See id*.[7]  His state of mind therefore cannot be imputed to Shandy for actual malice purposes.  *See, e.g.*, *D.A.R.E. Am.*, 101 F. Supp. 2d at 1278-79 (actual malice of "Form 1099" independent contractor cannot be imputed to corporate publisher); *see also Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1446 (8th Cir. 1989).  Stated differently, even if Mr. Burrows intended to defame Plaintiff (which he did not), his intent would be irrelevant to whether Shandy could be liable.  *See id*.

Second, even assuming Mr. Burrows' state of mind could be imputed to Shandy, neither he, nor any other persons working on the Video Report, *intended* to imply that Plaintiff was soliciting prostitutes.  *See* Burrows Decl. ¶ 19.  That is dispositive of Plaintiff's claims under well-settled constitutional law, as reinforced

---

[7] The record conclusively demonstrates that Mr. Burrows was an independent contractor, not an employee.  In California, "[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired."  *S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989).  Here, Shandy exerted little, if any control, over how Mr. Burrows edited the Video Report.  *See* Burrows Decl. ¶¶ 13-20; Demeke Decl. ¶ 18; R. Attipa Decl. ¶ 7.  Moreover, in determining employment status, California courts will also consider several "secondary factors," including whether the worker receives a salary, whether he or she has a separate occupation and business, and whether the parties to the arrangement believed they created an employer/employee relationship.  *See, e.g.*, *D.A.R.E. Am. v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270, 1279 (C.D. Cal. 2000).  Here, Mr. Burrows was not a salaried employee; he continued to operate his own freelance business while editing videos for Shandy; and both he and Shandy mutually understood that he was not a Shandy employee (as evinced by Shandy reporting Mr. Burrows' earnings on a Form 1099 instead of a W-2).  *See* Burrows Decl. ¶¶ 3, 5; R. Attipa Decl. ¶¶ 8-10.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

by several Ninth Circuit decisions.  In *Newton v. National Broadcasting Company*, 930 F.2d 662 (9th Cir. 1990), for example, iconic singer Wayne Newton claimed that a news broadcast falsely implied that the Mafia had financed his purchase of a Las Vegas casino in exchange for an undisclosed stake in the property.  The district court upheld a jury verdict for Mr. Newton, concluding that he sufficiently established actual malice because the implication was "clear and inescapable" from the broadcast itself.  *Newton*, 930 F.2d at 667.  The Ninth Circuit reversed, holding that, under the actual malice standard, even a "clear and inescapable" implication cannot be actionable unless there is clear and convincing evidence that the defendant actually intended the implication.  *See id*. at 679-85.  Finding no such intent, the Ninth Circuit reversed the district court's order.  *See id*.

Eight years later, in *Dodds v. American Broadcasting Co.*, 145 F.3d 1053 (9th Cir. 1998), the Ninth Circuit considered a state court judge's defamation-by-implication claim that arose from a televised news broadcast.  The Ninth Circuit first concluded that a reasonable viewer of the broadcast would come away with the false impression that the judge decided cases by consulting a crystal ball.  *See Dodds*, 145 F.3d at 1064.  Nevertheless, the court held that it was "not enough . . . to show that [the] implication was reasonable."  *Id*.  Citing *Newton*, the Ninth Circuit held that the judge had to independently prove, by clear and convincing evidence, that the broadcaster possessed the "subjective or actual intent" to convey the false impression.  *Id*.  Because the judge failed to meet this burden, the Ninth Circuit affirmed the dismissal of the judge's lawsuit.  *Id*.[8]

---

[8] In contrast, the Ninth Circuit has held that defamation plaintiffs can establish actual malice in implication cases only where there is evidence, independent from the publication itself, showing that the defendants intended to defame the plaintiff.  In *Manzari v. Associated Newspapers Ltd.*, for example, a pornographic actress sued an online news publication that used a photograph of her in an article about an HIV epidemic in the adult film industry, thus creating the false impression that she had HIV.  830 F.3d 881, 892 (9th Cir. 2016).  In considering the issue of actual malice, the Ninth Circuit first noted that it was not enough for the actress to show that "an ordinary viewer would have perceived the implication."  *See id*.  The Ninth Circuit then held that the actress had produced sufficient evidence of actual malice because writers for the publication "actively removed key contextual information" from the photograph's caption, and replaced it with information reinforcing the impression that the actress had HIV.  The Ninth

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

Plaintiff cannot meet his burden here.  The evidence all points to a single explanation for any false impression conveyed by the Video Report:  It was an honest mistake.  For their part, Ms. Struck and Mr. Demeke merely selected several stock images for potential inclusion in the Video Report, not knowing which images would make the final cut.  *See* Struck Decl. ¶¶ 20, 21; Demeke Decl. ¶¶ 18, 19.  Regarding the actual use of images in the Video Report, Ms. Struck's only intention – an intention entirely consistent with the iPhone recording and her script – was that a still image of the man in the iPhone recording would appear when she states "this fan needs to be a bit more DL—he's holding up the phone for all the world to see . . . ."  *See* Struck Decl. ¶ 20.

For his part, Mr. Burrows was required to quickly edit the Video Report under a tight production schedule with multiple other deadlines.  *See* Burrows Decl. ¶ 22-23.  Mr. Burrows did not receive any instruction from Ms. Struck or Mr. Demeke, or anyone else at Shandy for that matter, on which images should be included in the Video Report, or where specifically those images should appear.  *See* Struck Decl. ¶ 21-24; Demeke Decl. ¶ 19.  Mr. Burrows selected the Photograph in question to depict Ravens fans generally, and not any fan in particular.  *See* Burrows Decl. ¶¶ 13, 20.  Though Mr. Burrows now realizes that the Video Report may be capable of conveying a false impression about Plaintiff, he was not aware of (and did not intend) that impression at the time of publication.  *See* Burrows Decl. ¶¶ 18-21.

Shandy does not dispute that a mistake was made here—that is why it promptly and voluntarily removed the Video Report when the issue was called to

---

Circuit further emphasized that the photograph at issue was not a "stock image."  Rather, the news publication knew that the woman in the photograph was a famous pornographic actress, and it consciously decided to include an image of that woman in an article about the adult film industry.  *See id.*  Similarly, in *Eastwood v. National Enquirer, Inc.*, the Ninth Circuit upheld a jury finding of actual malice where there was evidence showing that the publication had engaged in a routine practice of falsely identifying certain articles as "exclusive."  123 F.3d 1249, 1256 (9th Cir. 1997).  The facts that were dispositive in *Manzari* and *Eastwood* are not even alleged to be present here.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE
OR ALTERNATIVELY TO DISMISS COMPLAINT

its attention.  But, under the First Amendment, a mistake such as this one is not actionable where the plaintiff is a public official who must prove actual malice by clear and convincing evidence.  *See, e.g.*, *Jones v. Scripps Media, Inc.*, No. 16-cv-12647, 2019 WL 265280, at *6 (E.D. Mich. Jan. 18, 2019) (misquotation in news broadcast, which unintentionally omitted the word "if" from the phrase "if [plaintiff] violated the law," was the sort of "accidental editing error" that could not support finding of actual malice), *appeal filed*, No. 19-1163 (6th Cir. Feb. 19, 2019); *Marcone v. Penthouse Int'l Magazine For Men*, 754 F.2d 1072, 1091 (3d Cir. 1985) (a "mistake . . . might be called unprofessional, even negligent, but it cannot be said to rise to the level of actual malice"); *Durando v. Nutley Sun*, 209 N.J. 235, 459, 37 A.3d 449, 459 (2012) ("a mistake made by the defendant due to 'haste to edit the article while managing multiple responsibilities[,]' [is] insufficient to meet the actual-malice threshold") (citation omitted).  Under this body of well-established law, Plaintiff cannot succeed on his claims against Shandy, and the company's motion to strike the Complaint therefore should be granted.

### C.   Defendants Are Entitled To Their Attorneys' Fees And Costs

For the foregoing reasons, Plaintiff's lawsuit is subject to dismissal under California's anti-SLAPP statute.  Consequently, Defendants are entitled to the attorneys' fees and costs they incurred in connection with bringing the anti-SLAPP motion, in an amount to be determined at a subsequent hearing.  *Khai v. Cty. of Los Angeles*, 730 F. App'x 408, 411 (9th Cir. 2018) ("Attorney's fees are mandatory for a successful anti-SLAPP motion.") (citing Cal. Civ. Proc. Code § 425.16(c)(1)).

## II.   ALTERNATIVELY, THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

Plaintiff's claims are properly subject to a motion to strike under the anti-SLAPP statute.  *See supra*.  But even if that were not the case, the Complaint is in

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

any event subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[9]

Dismissal under Rule 12(b)(6) is appropriate where the plaintiff's complaint fails to state a claim upon which relief can be granted.  As the U.S. Supreme Court held in *Iqbal* and *Twombly*, to withstand a Rule 12(b)(6) motion, the complaint most contain "more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). A "[f]ormulaic recitation of the elements of a cause of action will not do."  *Id*. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

It is well-settled that the requirements of *Iqbal* and *Twombly* apply with full force to the pleading of actual malice in defamation cases.  *See, e.g.*, *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1027-28 (N.D. Cal. 2017) (noting consensus among circuit courts); *see also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702-03 (11th Cir. 2016) (applying *Iqbal*/*Twombly* standards to actual malice pleading); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014) (same); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613-14 (7th Cir. 2013) (same); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012) (same).

"[A]ctual-malice buzzwords" are insufficient, *see Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 56 (1st Cir. 2012), and a plaintiff cannot simply rely on conclusory allegations that defendants "knew" the statements were false or acted with "reckless disregard" of their truth.  *See, e.g.*, *Biro v. Conde Nast* (*Biro II*), 807 F.3d 541, 544 (2d Cir. 2015) ("'naked assertions' or 'conclusory statements' are not enough") (quoting *Iqbal*, 556 U.S. at 678).  Instead, a public figure or official must "plead 'plausible grounds' to infer actual malice by alleging

---

[9] Unlike their anti-SLAPP motion, Defendants' motion to dismiss is based solely on the allegations of the Complaint, and not any extrinsic evidence.

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

'enough *fact[s]* to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Id.* at 546 (emphasis added) (citation omitted).

Plaintiff has fallen well short of his pleading burden here. The Complaint alleges no specific *facts* supporting the inference that Defendants acted with actual malice—*i.e.*, that they intended to convey a false implication about Plaintiff.[10] Instead the Complaint rests entirely on conclusory labels and "actual malice buzzwords."[11] That is insufficient under *Iqbal/Twombly*. The Complaint must therefore be dismissed.[12]

Relatedly, Plaintiff's Complaint fails under *Iqbal/Twombly* because he has not "nudge[d] [his] allegation[s] of actual malice from conceivable to plausible." *See Biro I*, 963 F. Supp. 2d at 281. The Complaint contains no allegations supporting a plausible inference that Defendants had it in for Plaintiff, or that they disseminated the Video Report with the intent to falsely accuse him of sex crimes. To the contrary, the Complaint merely alleges that (1) Ms. Struck selected a "stock image" for inclusion of the Video Report, (2) the Video Report created a false impression about Plaintiff, and (3) Defendants promptly endeavored to remove the

---

[10] The Complaint appears to allege that Defendants acted with actual malice because they knew the person in the Photograph was not the same person shown in the iPhone video recording. *See* Compl. ¶ 41. However, that fact is insufficient to support a finding of actual malice in an implication case, as Plaintiff must prove by clear and convincing evidence that Defendants *subjectively intended to convey the false impression* that the man in the Photograph and the man in the iPhone video recording were one and the same. *See supra* pp. 14-16.

[11] *E.g.*, Compl. ¶ 55 ("Defendants knew these statements were false and/or it [sic] acted with reckless disregard for the truth"); ¶ 56 ("Defendants had actual knowledge that the statements were false and/or the statements were made with reckless disregard for the truth"); ¶ 61 ("Defendants knowingly or recklessly made the false and defamatory statements. Defendants made the statements with actual malice"); ¶¶ 66-67 (Defendants "acted with the knowledge that these statements were false" or "made these statements with a reckless disregard for the truth . . . "); ¶ 73 ("Defendants knew that the facts they publicized about Mr. Zirkin were false or they made the assertions with a reckless disregard for the truth . . . .").

[12] The only arguable "fact" Plaintiff alleges regarding actual malice is his claim that "Defendants did not communicate with any at www.bustedcoverage.com about how that website came to obtain the video . . . ." *See* Compl. ¶ 34. But a failure to investigate, even if true, is insufficient to establish actual malice. *See, e.g.*, *Biro v. Conde Nast* (*Biro I*), 963 F. Supp. 2d 255, 287 (S.D.N.Y. 2013) (allegations of failure to investigate, without more, are insufficient to sufficiently plead actual malice under *Iqbal/Twombly*).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

22

Video Report once the matter was brought to their attention. *See* Compl. ¶¶ 28-29, 39-40. The only plausible inference one could draw from those facts is that Defendants made a mistake. As noted above, however, a mistake does not amount to actual malice. *See* p. 20, *supra*. Plaintiff's claims for defamation and false light should therefore be dismissed with prejudice.[13]

Additionally, Plaintiff's claims against the individual defendants must also be dismissed because he does not (and cannot) plausibly allege that they published the Video Report. *See* pp. 12-13, *supra*.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court strike the Complaint under California's anti-SLAPP statute and award to Defendants their attorneys' fees and costs in an amount to be determined at a subsequent hearing. Alternatively, the Court should dismiss the Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: February 28, 2019                    **BALLARD SPAHR LLP**


By:  /s/ Scott S. Humphreys
       Jay Ward Brown
          (admitted *pro hac vice*)
       Scott S. Humphreys
          (SBN 298021)
       Alexander I. Ziccardi
          (admitted *pro hac vice*)


*Attorneys for Defendants*

---

[13] Dismissal with prejudice is appropriate because Plaintiff has filed three separate complaints (two in Maryland, and one in California) arising from the Video Report, none of which adequately pleads actual malice. *See* Dkt. Nos. 1-1, 1-4, 1-5. It is thus evident that any amendment would be futile, as Plaintiff cannot allege sufficient facts to support his claims. *See, e.g.*, *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1157 (N.D. Cal. 1983) (dismissing complaint with prejudice where, despite multiple attempts, plaintiff could not adequately plead actually malice), *aff'd*, 732 F.2d 163 (9th Cir. 1984).

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909