McNICHOLAS & McNICHOLAS, LLP
Patrick McNicholas, Esq., SBN 125868
Justin J. Eballar, Esq., SBN 294718
10866 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90024-4338
Tel:  (310) 474-1582
Fax: (310) 475-7871

JOSEPH, GREENWALD & LAAKE, P.A.
Timothy F. Maloney (admitted *pro hac vice*)
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
Tel: (301) 220-2200
Fax: (301) 220-1214

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ROBERT ZIRKIN,<br><br>       Plaintiff,<br><br>     v.<br><br>SHANDY MEDIA, INC., a California Corporation<br><br>       Defendant. | CASE NO.  2:18-cv-9207-ODW-SS<br><br>**PLAINTIFF'S OPPOSITION TO SPECIAL MOTION TO STRIKE COMPLAINT OR, ALTERNATIVELY, TO DISMISS**<br><br>Date:        May 6, 2019<br>Time:       1:30 p.m.<br>Courtroom:  5D<br>Judge:     Hon. Otis D. Wright, II |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.............................1

I.    SUMMARY OF ARGUMENT ...................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...........3

    A.    Shandy Media's Publication of the Video .............................3

    B.    Plaintiff filed suit in the Circuit Court for Baltimore County, Maryland ..........................................................6

    C.    Plaintiff filed suit in the Superior Court of California and the lawsuit was removed to this Court.........................7

III.    ARGUMENT ............................................................................7

    A.    Plaintiff's Complaint should not be stricken under California's anti-SLAPP statute ..........................................7

        1.  Shandy Media's Video does not concern a matter of "public interest" and therefore does not fall under the anti-SLAPP statute ..........................................9

        2.  Plaintiff has satisfied his burden of showing there is a probability of prevailing on his claims ..........................15

            a.    Plaintiff's defamation claim has merit ...........................17

            b.    Plaintiff's false light claim has merit ............................20

    B.    Plaintiff should be permitted to conduct discovery in support of his Opposition to the Motion to Strike.................................21

    C.    Plaintiff is entitled to attorneys' fees and costs .................23

    D.    The Complaint should not be dismissed pursuant to Rule 12(b)(6) ..................................................................23

IV.    CONCLUSION ......................................................................25

1
2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4
5
*Adobe Sys. v. Coffee Cup Partners, Inc.*, 2012 U.S. Dist. LEXIS 127602 (N.D. Cal. Sept. 6, 2012). ..................................................................................... 9, 16

6
7
*Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 63507 (N.D. Cal. June 15, 2011 ..................................................................................................... 17

8
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................. 23

9
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 23

10
*Bikkina v. Mahadevan*, 241 Cal. App. 4th 70 (2015),............................ 12

11
*Briscoe v. Reader's Digest Ass'n*, 4 Cal. 3d 529 (1971) ........................ 14

12
*Brodeur v. Atlas Entertainment, Inc.* 248 Cal App. 4th 665 (2016). ...........17, 18, 20

13
*Central Valley Hospitalists v. Dignity Health*, 19 Cal. App. 5th 203(2018) ............9

14
15
*Clark v. Hidden Valley Lake Ass'n*, 2017 U.S. Dist. LEXIS 180418 (N.D. Cal. Oct. 31, 2017). ............................................................................................... 18

16
*Cross v. Cooper*, 197 Cal. App. 4th 357 (2011),................................... 14, 15

17
*Daniel v. Wayans*, 8 Cal. App. 5th 367 (2017)......................................... 15

18
19
*D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270 (C.D. Cal. 2000). ....................................................................................... 20

20
*D.C. v. R.R.*, 182 Cal. App. 4th 1190 (2010) ......................................... 8, 15

21
*De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845 (2018) .......................... 20

22
*Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002)................................. 24

23
*Forsher v. Bugliosi*, 26 Cal. 3d 792 (1980)) ................................................ 17

24
*Foundation for Taxpayer & Consumer Rights v. Garamendi*, 132 Cal. App. 4th 1375 (2005) ................................................................................................... 23

25
26
*Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435 (2011). ...................................................................................................9, 15, 16

27
*Gill v. Curtis Publishing Co.*, 38 Cal. 2d 273 (1952)................................. 21

28

ii

*Grenier v. Taylor*, 234 Cal. App. 4th 471 (2015)...................................................12, 16

*Grewal v. Jammu*, 191 Cal. App. 4th 977 (2011)....................................................8

*Grigoryan v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 189873 (C.D. Cal. Dec. 31, 2012).......................................................................................................................23

*Harte-Hanks Communications, Inc. v. Connaughton,* 491 U.S. 657 (1989) ...........18

*Heller v. NBCUniversal, Inc.*, 2016 U.S. Dist. LEXIS 195031 (C.D. Cal. Mar. 30, 2016).......................................................................................................................10

*Iglesia Ni Cristo v. Cayabyab*, 2019 U.S. Dist. LEXIS 38846 (N.D. Cal. Mar. 11, 2019).......................................................................................................................21

*Issa v. Applegate*, 31 Cal. App. 5th 689 (2019)........................................................17

*La Marca v. Capella Univ.*, 2009 U.S. Dist. LEXIS 140899
   (C.D. Cal. Jan. 6, 2009)........................................................................................18

*Mann v. Quality Old Time Service, Inc.*, 120 Ca. App. 4th 90 (2004)...............12, 16

*Manzari v. Associated Newspapers Ltd.*, 830 F.3d 887 (9th Cir. 2016).16, 17, 18, 19

*Metabolife Int'l v. Wornick*, 264 F.3d 832 (9th Cir. 2001). ............................3, 21, 24

*M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623 (2001)....................................14, 20

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010)..............................16

*Moore v. Shaw*, 116 Cal. App. 4th 182 (2004) ....................................................12, 23

*O'Hilderbrandt v. Columbia Broadcasting System, Inc.*, 40 Cal. App. 3d
   323 (1974)............................................................................................................21

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828 (9th Cir. 2018).......................................................................................................................22

*Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010)...........................................................8

*Sarver v. Chartier*, 813 F.3d 891 (9th Cir. 2016)......................................................8

*Steep Hill Labs., Inc. v. Moore*, 2018 U.S. DIst. LEXIS 39337 (N.D. Cal. Mar. 8, 2018).......................................................................................................................12

*Thomas v. Quintero*, 126 Cal. App. 4th 635 (2005)..................................................12

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003)............................................11, 14

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR, ALTERNATIVELY, TO DISMISS

*Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157 (1979) ....................................14

*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.*, 172 Cal. App. 4th 1561 (2009)................................................................................................11, 13

*Z.F. v. Ripon Unified School District*, 482 F. App'x 239 (9th Cir. 2012)...............22

## Statutes

Cal. Civ. Proc. Code §§ 425.16 ....................................................................*passim*

Fed. R. Civ. Proc. 12(b)(6) ...................................................................... 23-24

Fed. R. Civ. Proc. 41(a)(1)(A)(i) ......................................................................2

Fed. R. Civ. Proc. 41(a)(1)(A)(ii) .....................................................................2

Fed. R. Civ. Proc. 41(a)(1)(B) .........................................................................2

Fed. R. Civ. Proc. 56........................................................................21, 22

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR, ALTERNATIVELY, TO DISMISS

## **MEMORANDUM OF POINTS AND AUTHORITES**

## I.  SUMMARY OF ARGUMENT.

Defendant Shandy Media, Inc. ("Shandy Media") wrote, created, and published a defamatory video, titled "Ravens Fan Gets Caught Looking for Prostitutes on Craigslist During Game," which falsely portrayed Plaintiff Robert Zirkin, a Maryland State Senator, as seeking prostitutes at an NFL game. At the same time this video ("the Shandy Media Video" or "the Video") displayed a stock photograph of Mr. Zirkin attending an NFL game with his young daughter, the Video's announcer states "this man" is "holding up the phone for all the world to see." The Video then includes a recording of a different grey-haired Baltimore Ravens fan allegedly searching for prostitutes on his cellphone while attending a Ravens game. The clear implication is that Mr. Zirkin and this fan searching for prostitutes are the same person, which is false.

Within days of the Shandy Media Video being posted on Defendant's Facebook page and YouTube channel and being republished by Defendant's partners and other websites, Plaintiff initiated a lawsuit in the Circuit Court for Baltimore County, Maryland against Defendant Shandy Media and other defendants. The circuit court granted a temporary restraining order on October 23, 2017, enjoining Shandy Media and the other defendants from republishing the Video and ordering the defendants to remove the Video from their websites and social media accounts and to immediately notify all other websites that republished the Video of its falsity.

After this matter was dismissed without prejudice by the Circuit Court for Baltimore County for lack of personal jurisdiction, Plaintiff filed suit in the Superior Court for California, County of Los Angeles, and the case was removed to this Court.

1

Mr. Zirkin's complaint is not subject to an anti-SLAPP motion to strike, as defined in California Civil Procedure Code § 425.16.[1] First, Plaintiff filed suit to recover for the damages caused to his reputation and character—and the mental anguish and personal humiliation he has suffered—by the publication of the defamatory Shandy Media Video. He did not file suit in an effort to tie up Defendant's resources or intimidate or silence Defendant, which is the hallmark of SLAPP lawsuits, as Defendant had already removed the Video.

Second, the Video does not concern an "issue of public interest," as the Video, which is mocking and shaming the Ravens fan seemingly searching Craigslist for prostitutes, does not affect a large number of people nor does it involve an ongoing controversy, dispute, or discussion of public significance.

Third, Mr. Zirkin's complaint is not a SLAPP lawsuit because his claims for defamation and false light have merit and he has shown a probability of prevailing on these claims. Defendant Shandy Media acted with actual malice in publishing the Video, which creates the implication that Mr. Zirkin is the grey-haired fan searching for prostitutes, as it knew that this was false and/or it acted with reckless disregard of this falsity in using the stock photograph in the Video and placing the photograph where it did in the Video.

The Court should also deny Defendant Shandy Media's motion to dismiss the Complaint for failure to state a claim as Plaintiff has sufficiently pled claims for defamation and false light, alleging that Shandy Media acted with actual malice in

---

[1] The Motion to Strike or, Alternatively, to Dismiss for Failure to State a Claim is moot as to Angela Struck, Raymond Attipa, and Tigranouhi Attipa. Plaintiff filed a Notice of Dismissal Without Prejudice as to these individual defendants on March 1, 2019. (Dkt. 25). The Court issued an order on March 4, 2019 dismissing Struck, Attipa, and Attipa, leaving Shandy Media as the only Defendant. (Dkt. 26). The Court's March 4 Order refers to a "Joint Stipulation of Dismissal," and the Court dismissed the individual Defendants "with prejudice" pursuant to Rule 41(a)(1)(A)(ii). (*Id.*).  It appears this may have been a mistake by the Court, as Plaintiff filed a "Notice of Voluntary Dismissal" pursuant to Rule 41(a)(1)(A)(i), not a joint stipulation, and the individual defendants should have been dismissed *without* prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B). Plaintiff intends to file a Motion to Reconsider or Revise the Court's Order.

1  publishing the Video.

2      If the Court finds Plaintiff has not satisfied his burden in opposing the anti-

3  SLAPP motion to strike, which he has, the Court should allow Plaintiff sixty (60)

4  days to take discovery as to the evidentiary issues. *See Metabolife Int'l v. Wornick*,

5  264 F.3d 832, 846 (9th Cir. 2001).

6      For the reasons set forth herein, Defendant Shandy Media's anti-SLAPP

7  motion to strike or, alternatively, motion to dismiss should be denied in its entirety.

8  **II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

9      **A. Shandy Media's Publication of the Video**

10     Plaintiff is a husband, father of two young daughters, and respected attorney.

11 (Ex. 1, Zirkin Decl., ¶¶ 2-3). He has been a member of the Maryland Bar since 2000

12 and is a founding partner of the law firm Zirkin and Schmerling Law, with two

13 offices in the Baltimore, Maryland area. (*Id.* ¶ 2).

14     On October 17, 2017, The Fumble, a sports news website owned and operated

15 by Defendant Shandy Media, published a video titled, "Ravens Fan Gets CAUGHT

16 Shopping for Prostitutes on Craigslist." (Ex. A to Def.'s Mot. to Strike, Video); (Ex.

17 2, R. Attipa Dep. Tr., at 18). The Video was uploaded by Shandy Media on The

18 Fumble's YouTube page and then into Shandy Media's content management

19 system, where it then got pushed out to Shandy Media's distributors. (Ex. 2, R.

20 Attipa Dep. Tr., at 18). The Video was published on Shandy Media's primary

21 website, Obsev.com, and on The Fumble's Facebook page. (Ex. 2, R. Attipa Dep.

22 Tr., at 19-20).

23     The Video was developed by Matthew Demke, a sports producer at The

24 Fumble and Angela Struck, an independent contractor. (Ex. 2, R. Attipa Dep. Tr.

25 21-22). Demeke found a recording on the website www.bustedcoverage.com of a

26 Ravens fan allegedly looking for prostitutes on Craigslist while attending a Ravens

27 football game (the "Fan Recording"). (*Id.* ¶¶ 23-24). Struck wrote the script for a

28

video about this Fan Recording and, together with Demeke, downloaded a stock photograph of Mr. Zirkin from Getty Images for use in the Video. (*Id.* ¶¶ 23-25).

In the one minute, 49 second Video, Struck begins by describing the outcome of the Ravens-Bears football game, before stating:

> The game was a close one, ending 27-24, but apparently it wasn't enough to hold every fan's attention, most importantly this grey-haired Ravens fan who was caught creeping on Craigslist for prostitutes during the game. What's the weirdest thing you've accidently glanced on someone's iPhone? Let me know your craziest in the comments below.

(Ex. A to Def.'s Mot. to Strike, Video, at 0:28-50).

The Video then slowly pans up on a photograph of Mr. Zirkin—a grey-haired Ravens fan—wearing a Ravens jersey and pointing at himself. (*Id.* at 0:51); (Ex. 1, Zirkin Decl., ¶ 6). Mr. Zirkin's then-nine-year-old daughter is also shown in the photograph. (*Id.*).



This photograph was taken at a Ravens game in London, England that Mr. Zirkin attended with his family on September 24, 2017. (*Id.* ¶ 7). Mr.

Zirkin was not aware that the photograph had been taken nor that it was being used as a stock photograph. (*Id.*). Demeke and Struck downloaded the stock photograph of Mr. Zirkin from Getty Images, a stock photograph company, for use in the Video. (Ex. 2, R. Attipa Dep. Tr., at 25).

At the same time the photograph of Mr. Zirkin is shown, Struck states, "Well this man needs to be a bit more DL.[2] He's holding up the photo for all the world to see." (Ex. A to Def. Mot. to Strike, Video, at 0:51-58). Struck continues, "Unfortunately for him the person sitting behind him is active on social media. Check out the video he recorded and posted online with the caption 'Craigslist's new target demographic is old, white Ravens fans.'" (*Id.* at 0:58-1:13).

The Video cuts to the Fan Recording, which zooms in from the back of a grey-haired man's head to the man's phone, which allegedly shows the man looking on Craigslist for prostitutes. (Ex. A to Def. Mot. to Strike, Video, at 1:13-1:22). The Fan Recording was obtained by Shandy Media from www.bustedcoverage.com. (Ex. 2, R. Attipa Dep. Tr., at 27).  Shandy Media did not know how Busted Coverage obtained the video, and Mr. Attipa "highly doubt[ed]" that Shandy Media communicated with anyone at Busted Coverage before using the video. (*Id.*). Mr. Zirkin is not the man in the Fan Recording. (Ex. 1, Zirkin Decl., ¶ 11). He has no connection to that man nor does he know that man's identity. (*Id.*).

The Fan Recording zooms in further on the man's face as Struck narrates, "It's a little hard to see but if you zoom in on the video you can see 'Hot Hot Hot Sexy Brunette Bombshell and Sexy Pics." (Ex. A to Def. Mot. to Strike, Video, at 1:25-30). Struck continues her narration, stating, "Yikes. Ugh. I feel bad for this guy's wife and kids. What's the raunchiest thing you've ever seen go down at a sporting event. Let me know your best in the comments below." (*Id.* at 1:32-1:40).

The Shandy Media video was published on its social media sites and

---

[2] Slang for "down low."

republished on other websites, including Charm City Sports Network, a Baltimore-based website. (Ex. 1, Zirkin Decl., ¶ 15). Mr. Zirkin first learned of the Video when he received a text message from his law partner on October 18 with a link to the Video. (*Id.* ¶ 4). On October 18, 2017, Mr. Zirkin contacted Leo Demirjian, who he understood to be associated with Shandy Media and/or The Fumble to inform him that he was not the man in the Fan Recording and asked that the Video therefore be taken down. (*Id.* ¶ 16). In his response, Demirjian admitted to Mr. Zirkin that Shandy Media knew that the stock photograph they used showed a different person than the man in the Fan Recording. (Ex. 6, Demirjian Email). Mr. Demirjian stated that Shandy Media would be removing the Video "as a favor to [Mr. Zirkin], a serving State Senator," but the Video continued to be accessible online on some channels, such as The Fumble's Facebook page. (Ex. 1, Zirkin Decl., ¶ 18).

## B. Plaintiff filed suit in the Circuit Court for Baltimore County, Maryland.

Plaintiff filed a Complaint in the Circuit Court for Baltimore County, Maryland on October 19, 2017, against Shandy Media and other defendants including Struck, Attipa, and Attipa. *See* Case No. 03-C-17-010285. The Court granted Plaintiff's request for a temporary restraining order on October 23, 2017. (Ex. 3, TRO). The Court found that Plaintiff would "suffer substantial, immediate and irreparable harm in the form of damage to his character and reputation if immediate injunctive relief is not issued," and enjoined Shandy Media and the other defendants from republishing the Video. (*Id.*). Shandy Media and the defendants were ordered to remove the video from their websites and social media accounts and ordered to immediately notify all other websites that have subsequently republished the video of the video's falsity. (*Id.*).  The court also authorized immediate expedited discovery for the purpose of reserving evidence in the case. (*Id.*).

On December 15, 2017, Shandy Media and the individual Shandy Media

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR, ALTERNATIVELY, TO DISMISS

defendants filed a motion to stay discovery. The circuit court granted the motion to stay discovery, other than discovery related to Shandy Media and the individual Shandy Media defendants' motion to dismiss for lack of personal jurisdiction. (Ex. 4, Order Granting Motion to Stay Discovery). While Raymond Attipa, as the corporate designee for Shandy Media, was deposed as related to the jurisdictional matter, and Shandy Media and the individual defendants responded to written discovery related to personal jurisdiction, no other discovery was permitted in the circuit court case, other than Shandy Media responding to two document requests pertaining to the removal of the Video. (Ex. 5, Maloney Decl., ¶¶ 9-10). On October 5, 2018, the circuit court dismissed the complaint without prejudice finding that the court lacked personal jurisdiction.

### C. Plaintiff filed suit in the Superior Court of California, and the lawsuit was removed to this Court.

Plaintiff filed a complaint on October 16, 2018 in the Superior Court of California, County of Los Angeles, asserting claims for defamation and false light against Shandy Media, Inc., Angela Struck, Raymond Attipa, and Tigranouhi Attipa. (Dkt. 1).  Defendants removed the case to this Court on October 26, 2018. (Dkt. 1). Plaintiff's motion to remand the case was denied on February 14, 2019. (Dkt. 22).

Shandy Media, Angela Struck, Raymond Attipa, and Tigranouhi Attipa filed a Motion to Strike or, in the Alternative, Motion to Dismiss on February 28, 2019. (Dkt. 23). Plaintiff filed a notice of voluntary dismissal of Angela Struck, Raymond Attipa, and Tigranouhi Attipa on March 1, 2019.[3] The Court issued an Order on March 4, 2019 dismissing Struck, Attipa, and Attipa, and the Motion to Strike is therefore moot as to them. (Dkt. 26).

For the reasons set forth herein, Shandy Media's Motion to Dismiss or, in the

---

[3] Plaintiff's counsel had notified Defendants' counsel on February 27, 2019 that they would be voluntarily dismissing the individual Defendants.

7

1   Alternative, Motion to Strike should be denied in its entirety.

2   **III.    ARGUMENT.**
        **A. Plaintiff's Complaint should not be stricken under California's**
3          **anti-SLAPP statute.**

4       The lawsuit filed by Mr. Zirkin is not subject to California's anti-SLAPP

5   statute, Cal. Civ. Proc. Code §§ 425.16 *et seq.*

6       "The hallmark of a SLAPP suit is that it lacks merit, and [that it] is brought

7   with the goals of obtaining an economic advantage over a citizen party by increasing

8   the cost of litigation to the point that the citizen party's case will be weakened or

9   abandoned." *Price v. Stossel*, 620 F.3d 992, 999 (9th Cir. 2010). The conceptual

10  feature of SLAPP suits "are that they are generally meritless suits brought by large

11  private interests to deter common citizens from exercising their political or legal

12  rights or to punish them for doing so." *See Grewal v. Jammu*, 191 Cal. App. 4th 977,

13  995 (2011). *See also Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir. 2016)

14  ("California's anti-SLAPP statute is designed to discourage suits that 'masquerade

15  as ordinary lawsuits but are brought to deter common citizens from exercising their

16  political or legal rights or to punish them for doing so.'"); *D.C. v. R.R.*, 182 Cal.

17  App. 4th 1190, 1210 (2010) (stating that plaintiffs in SLAPP lawsuits do "not expect

18  to succeed in the lawsuit, only to tie up the defendant's resources for a sufficient

19  length of time to accomplish plaintiff's underlying objective").

20      Mr. Zirkin's Complaint was not filed in an effort to tie up Shandy Media's

21  resources or to intimidate or silence Shandy Media nor is his Complaint a meritless

22  First Amendment case. Rather, Mr. Zirkin initially brought this lawsuit in the

23  Circuit Court for Baltimore County, Maryland where he sought and obtained a

24  temporary restraining order compelling Defendants to remove the defamatory video

25  from its websites and social media accounts and to notify all other websites that

26  subsequently published the video of its falsity. (Ex. 3, TRO). Even prior to the TRO

27  order, Shandy Media had volunteered to remove the Video as a "favor" to Mr.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR,
ALTERNATIVELY, TO DISMISS

Zirkin. (Ex. 6, Demirjian Email).

In filing the Complaint in California nearly a year after the TRO was issued, Mr. Zirkin is not seeking to deter Shandy Media from the publication of videos and articles across its various websites and on social media or in an effort to force Shandy Media to remove the Video, which it already had done. Instead, Mr. Zirkin is seeking redress for the damages he suffered by Shandy Media's publication of the Video. Mr. Zirkin suffered real and cognizable injury, including, but not limited to severe emotional distress resulting from the discovery of the Video's publication and the harm to his reputation and character in the small legal and political field in Maryland. (Ex. 1, Zirkin Aff., ¶ 20). This distress was compounded by the knowledge that the Video, which included a photograph of his young daughter, was widely viewed by an unknown number of people. (*Id.*).

Courts analyze anti-SLAPP motions in two steps. First, a "defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's right of petition or free speech." *Adobe Sys. v. Coffee Cup Partners, Inc.*, 2012 U.S. Dist. LEXIS 127602, *47 (N.D. Cal. Sept. 6, 2012). Second, if the defendant makes a prima facie showing, plaintiff must "demonstrate a probability of prevailing on the challenged claims." *Id.* A motion to strike a Complaint under the anti-SLAPP statute may be granted only when both steps are satisfied. *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 443 (2011). Because Defendant has not shown that Plaintiff's suit arises from an act in furtherance of its right of petition or free speech and because Plaintiff has shown a probability of prevailing on his claims, the motion to strike should be denied.

### 1. Shandy Media's Video does not concern a matter of "public interest" and therefore does not fall under the anti-SLAPP statute.

The first step of the two step process in determining if a defendant should prevail on an anti-SLAPP motion is that the movant must make "a threshold

9

showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in" § 425.16(e) of the California Code. *See Central Valley Hospitalists v. Dignity Health*, 19 Cal. App. 5th 203, 217 (2018).

The Legislature intended that the anti-SLAPP statute be construed to "encourage continued participation in ***matters of public importance***." Cal. Code Civ. Proc. § 425.16(a) (emphasis added). The party who filed the anti-SLAPP motion "must make a threshold showing that the act or acts giving rise to the claim were in furtherance of the right of petition or free speech, or in connection with a public issue." *Heller v. NBCUniversal, Inc.*, 2016 U.S. Dist. LEXIS 195031, *23 (C.D. Cal. Mar. 30, 2016).

The anti-SLAPP statute defines "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

Defendant Shandy Media has not met its burden of showing that the Video falls into any of the categories set forth in § 425.16(e). The Video was not a statement made before a legislative, executive, or judicial proceeding nor was it made in connection with any issue under consideration by a legislative, executive, or judicial body. *Id.*

The Video was not made "in connection with an issue of public interest" or

10

"in connection with a public issue." *Id.* California courts have identified three types of "public issues": "those involving (1) an individual who is in the public eye; (2) conduct that could affect a large number of people beyond the direct participants; and (3) a topic of widespread, public interest." *Heller*, 2016 U.S. Dist. LEXIS 195031, at *24-25 (internal quotations omitted).

"Public interest does not equate with mere curiosity but instead a matter of public interest should be something of concern to a substantial number of people." *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003) (internal quotations omitted). Simply communicating information to a large number of people does not turn otherwise private information into a matter of public interest. *Id.* at 1133.

Defendant misleadingly claims that Plaintiff conceded that the public exhibited significant interest in the Fan Recording, citing to paragraphs 43 and 44 of the Complaint. (Dkt. 23, Def. Mot., at 10). Plaintiff has at no time conceded that there is a significant interest in the recording. Rather, paragraph 43 of the Complaint notes that the Video Recording "was republished on Shandy Media's social media accounts, including The Fumble's Facebook page, which had over 453,000 followers at the time." (Compl. ¶ 43). Paragraph 44 of the Complaint states that the video was republished on other websites, including Charm City Sports Network, BroBible.com, Dailysnark.com, Windstream.net, TotalProSports.com, and BustedCoverage.com. (Compl. ¶ 44). Merely because the Shandy Media Video and/or the Fan Recording were published by other websites does not turn the subject of the Shandy Media Video into one of public interest pursuant to § 425.16.

Defendant's argument that the Video concerns a matter of public interest, specifically an interest in the Fan Recording and the "phenomenon of witnessing deeply private moment's on a stranger's phone," should be rejected. (Dkt. 23, Def. Mot., at 11). Courts have held that there "should be some degree of closeness between the challenged statements and the asserted public interest; **the assertion of**

**a broad and amorphous public interest is not sufficient**." *Weinberg*, 110 Cal. App. 4th at 1132 (emphasis added) (internal citations omitted). *See also World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.*, 172 Cal. App. 4th 1561, 1570 (2009) ("[T]he fact that a broad and amorphous public interest can be connected to a specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute.") (internal quotations omitted).

In evaluating this first prong, courts "must focus on the *specific nature of the speech* rather than generalities that might be abstracted from it." *Steep Hill Labs., Inc. v. Moore*, 2018 U.S. Dist. LEXIS 39337, *12 (N.D. Cal. Mar. 8, 2018) (internal quotations omitted). Courts "cannot focus on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based." *Grenier v. Taylor*, 234 Cal. App. 4th 471, 481 (2015).

Defendant claims the public interest requirement is met where the challenged speech encourages further public discussion, but this must involve "public involvement in an ongoing controversy, dispute or discussion." *See Thomas v. Quintero*, 126 Cal. App. 4th 635, 661-62 (2005) (finding the activity involved an "ongoing controversy, dispute, or discussion" where the protest activities were coupled with an efforts to engage members of the church congregation in finding a solution to the dispute at issue).

In *Steep Hill Labs*, the court rejected defendant's argument that because plaintiff works in the marijuana industry and there is an ongoing public debate about the legalization of marijuana that this made his statements ones of public interest. 2018 U.S. Dist. LEXIS 39337, at *17. The court found that none of the statements related to any broader debate on marijuana legalization and therefore did not warrant anti-SLAPP protection. *Id.* at *18.

In *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 76 (2015), a researcher's advisor made a presentation, telling the researcher's colleagues that the researcher

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR, ALTERNATIVELY, TO DISMISS

had falsified data in a paper. The court rejected defendant's argument that because the dispute was based in part on a scholarly debate on climate change, it is a subject of general public interest. *Id.* at 83. The court reasoned that "[i]t is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate…" *Id.* at 84. In *Mann v. Quality Old Time Service, Inc.*, 120 Ca. App. 4th 90, 111 (2004), the court reasoned that while pollution can affect a large number of people, defendants' "alleged statements were not about pollution or potential public health and safety issues in general, but about [the plaintiffs'] specific business practices" and did not fall within the anti-SLAPP statue.

In *World Financial Group*, the court found that while issues of employee mobility and competition are matters of public interest when considered in the abstract, "one could arguably identify a strong public interest in the vindication of any right for which there is a legal remedy." 172 Cal. App. 4th at 1570. The court reasoned:

> By focusing on society's general interest in the subject matter of the dispute instead of the specific speech or conduct upon which the complaint is based, defendants resort to the oft-rejected, so-called synecdoche theory of public issue in the anti-SLAPP statute where the part [is considered] synonymous with the greater whole. In evaluating the first prong of the anti-SLAPP statute, we must focus on the *specific nature of the speech* rather than the generalities that might be abstracted from it.

*Id.* (internal quotations omitted).

In looking at the specific nature of the speech, it is clear that the Shandy Media Video was not a commentary on broader societal issues related to prostitution or societal or legal issues pertaining to the solicitation of prostitutes on Craigslist. Instead, the Video was mocking and shaming the man allegedly looking for prostitutes while attending an NFL game, as Struck narrates, "Yikes. Ugh. I feel bad for this guy's wife and kids." (Ex. A to Def. Mot., Video). As Shandy Media

13

employee, Leo Demirjian, admits in his email to Plaintiff on October 18, the "story" was about this man "searching for prostitutes on his phone." (Ex. 6, Demirjian Email). Defendant now contends that the public interest requirement is met because Struck asks viewers the "weirdest thing" they have seen on someone's iPhone and the "raunchiest thing" they have seen at a sporting event. (Ex. A to Def. Mot., Video). But this claim of a "broad and amorphous public interest" should be rejected, as the focus of the Video is on this one particular individual on his phone allegedly looking for prostitutes.

Defendant Shandy Media contention that news reports that relate to current criminal activity serve important public interest is far too broad a generalization. "The United States Supreme Court has rejected the claim that assertions of criminal conduct automatically fall within the public interest." *Weinberg*, 110 Cal. App. 4th at 1135 (citing *Wolston v. Reader's Digest Assn., Inc.*, 443 U.S. 157, 168-69 (1979)). *See Briscoe v. Reader's Digest Ass'n*, 4 Cal. 3d 529, 536-37 (1971) (declining to hold in some circumstances that an assertion that a person engaged in criminal conduct automatically falls within the public interest). As the court explained in *Weinberg*:

> Simply stated, causes of action arising out of false allegations of criminal conduct, made under circumstances like those alleged in this case, are not subject to the anti-SLAPP statute. Otherwise, wrongful accusations of criminal conduct, which are among the most clear and egregious types of defamatory statements, automatically would be accorded the most stringent protections provided by law, without regard to the circumstances in which they were made—a result that would be inconsistent with the purpose of the anti-SLAPP statute and would unduly undermine the protection accorded by paragraph 1 of Civil Code section 46, which includes as slander any false and unprivileged communication charging a person with a crime, and the California rule that false accusations of crime are libel per se.

110 Cal. App. 4th at 1127 (internal citations omitted).

The cases relied on by Defendant are distinguishable from the matter at issue.

14

In *M.G. v. Time Warner, Inc.*, 89 Cal. App. 4th 623, 629 (2001), the court found that a magazine article and HBO television program concerned the topic of child molestation in youth sports, which was an issue of significance and public interest. The article and television program concerned stories of adult coaches sexually molesting children playing team sports. *Id.* at 626. One of the examples concerned a coach who pled guilty to molesting five children he had coached. *Id.* Unlike the program and article in *M.G.*, Shandy Media did not publish the Video to provide a commentary on the societal problems of individuals soliciting prostitutes or using Craigslist to do so nor did it include any reporting on other similar instances.

In *Cross v. Cooper*, 197 Cal. App. 4th 357, 378 (2011), the court acknowledged that "the fact that a broad and amorphous public interest can be connected to a specific dispute is not sufficient to meet the statutory requirements of the anti-SLAPP statute." (Internal quotations omitted). The *Cross* court found the case did not involve a broad, amorphous public interest, as the conversation "involved the location of a registered sex offender, a subject specifically and directly related to an issue of compelling and widespread interest." *Id.* at 379. Here, Shandy Media was not using the Video in an effort to alert the public of this criminal conduct for purposes of protecting the public from the Ravens fan or from seeking witnesses who may know who he is in an effort to aid law enforcement.

Shandy Media's conduct in creating and publishing a video about a man looking for prostitutes on Craigslist while attending a Ravens football game does not satisfy a "public issue" as set forth in the anti-SLAPP statute. A recording of a man searching for prostitutes on his phone is not a matter of public interest nor is it in connection with any sort of common interest.

### 2. Plaintiff has satisfied his burden of showing there is a probability of prevailing on his claims.

If a court finds that the defendant has met its burden under the first step of the anti-SLAPP analysis, then the second step of the analysis requires a determination

15

1    as to "whether the plaintiff has demonstrated a probability of prevailing on the

2    claim." *D.C.*, 182 Cal. App. 4th at 1216. Because Defendant has not satisfied its

3    burden with respect to the first step, the Court should not consider whether Plaintiff

4    has satisfied the second step. *Id.* at 1231; *Daniel v. Wayans*, 8 Cal. App. 5th 367,

5    380 (2017). Even if Defendant could show that the Video involved an issue of

6    public interest, which it cannot, Plaintiff's claims for defamation and false light have

7    merit and a motion to strike would therefore be denied.

8         The probability of prevailing element "means a reasonable probability of

9    prevailing, not prevailing by a preponderance of the evidence." *Gerbosi*, 193 Cal.

10   App. 4th at 444. The Court must apply a "summary-judgment-like" test, "accepting

11   as true the evidence favorable to the plaintiff and evaluating the defendant's

12   evidence only to determine whether the defendant has defeated the plaintiff's

13   evidence as a matter of law." *Id.* The Court should look to the pleadings and

14   affidavits presented by both parties, but should "not weigh credibility or compare

15   the weight of the evidence." *Id.*; *Manzari v. Associated Newspapers Ltd.*, 830 F.3d

16   887 (9th Cir. 2016).  Instead, the Court's "single task is to determine whether the

17   plaintiff has made a prima facie showing of facts supporting his or her cause of

18   action." *Gerbosi*, 193 Cal. App. 4th at 444.

19        The required probability that a plaintiff will prevail "need not be high" and a

20   plaintiff need only show a "minimum level of legal sufficiency and triability."

21   *Adobe Sys.*, 2012 U.S. Dist. LEXIS 127602, at *47. "The plaintiff need only

22   establish that his or her claim has minimal merit to avoid being stricken as a

23   SLAPP." *Grenier*, 234 Cal. App. 4th at 480. *See Mindys Cosmetics, Inc. v. Dakar*,

24   611 F.3d 590, 598 (9th Cir. 2010) (stating that "the second step of the anti-SLAPP

25   inquiry is often called the 'minimal merit' prong"). Plaintiff is "not required to

26   *prove* the specified claim to the trial court," as doing so would deprive the plaintiff

27   of a jury trial. *Mann*, 120 Cal. App. 4th at 105. At the anti-SLAPP stage, "[a] public

28

16

figure who sues for defamation must establish a *probability* that he or she can produce such clear and convincing evidence," but need not present the clear and convincing evidence. *Manzari*, 830 F.3d at 889.

Plaintiff has sufficiently shown that he has a reasonable probability of prevailing on his defamation and false light claims.

### a. Plaintiff's defamation claim has merit.

Defendant Shandy Media's actions in publishing a video portraying Mr. Zirkin as an individual searching for prostitutes on Craigslist while at a football game were defamatory and impugned Mr. Zirkin's character and reputation, causing him mental anguish and injuring his professional and personal reputation.

"Defamation is the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injury or that causes special damages." *Greiner*, 234 Cal. App. 4th at 486. "False statements that accuse the plaintiff of criminal conduct are defamatory on their face." *Id. See also Art of Living Found. v. Does*, 2011 U.S. Dist. LEXIS 63507, *14 (N.D. Cal. June 15, 2011) ("[A]n allegation the plaintiff is guilty of a crime is generally libelous on its face and is actionable without proof of damages."). "The *sine qua non* of recovery for defamation…is the existence of a falsehood." *Brodeur v. Atlas Entertainment, Inc.* 248 Cal App. 4th 665, 678 (2016).

"California law recognizes that a defamatory statement can be either expressly stated or implied." *Manzari*, 830 F.3d at 889 (quoting *Forsher v. Bugliosi*, 26 Cal. 3d 792 (1980)) (internal quotations omitted). "If the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or otherwise creates a defamatory implication, he may be held responsible for the defamatory implication, even though the particular facts are correct." *Id.*

In determining if a statement is libelous, courts look at "what is explicitly stated as well as what insinuation and implication can be reasonably drawn from the

communication." *Issa v. Applegate*, 31 Cal. App. 5th 689, 703 (2019). In a defamation by implication case, the plaintiff must demonstrate that "(1) his or her interpretation of the statement is reasonable; (2) the implication or implications to be drawn convey defamatory facts, not opinions; (3) the challenged implications are not 'substantially' true; and (4) the identified reasonable implications could also be reasonably deemed defamatory." *Id.* at 707.

In *Manzari*, the defendant newspaper ran an article with the headline "Porn industry shuts down after 'female performer' tests positive for HIV," and after four sentences, was followed by a photograph of the plaintiff, a porn star. 830 F.3d at 890. The court determined that "a reasonable reader could infer that the article is about" the plaintiff *Id.*

The statements and implications in the video were false, as Mr. Zirkin was not the man on his phone looking for prostitutes, and Mr. Zirkin has no knowledge as to the identity of that man. (Ex. 1, Zirkin Decl., ¶ 12). Defendant's statements and the use of Mr. Zirkin's image constitute defamation *per se* as the injurious character of their portrayal is self-evident, given that Defendants accused Plaintiff of criminal conduct—propositioning or attempting to proposition a prostitute—and conduct tending to injure him with respect to his office and profession.

In defamation cases involving public officials, plaintiffs must establish that defendant published the statement with actual malice, *i.e.*, knowledge of the statement's falsity or reckless disregard as to whether it was false or not. *La Marca v. Capella Univ.*, 2009 U.S. Dist. LEXIS 140899, *7 (C.D. Cal. Jan. 6, 2009); *Brodeur*, 248 Cal. App. 4th at 678. The Supreme Court has made clear that as to "reckless disregard" the defendant "must either have made the false publication with a high degree of awareness of…probable falsity, or have entertained serious doubts as to the truth of his publication." *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotations and citations omitted).

18

At the anti-SLAPP motion to strike stage, plaintiff need not prove actual malice but need only "establish a probability that he or she can produce clear and convincing evidence that allegedly defamatory statements were made with knowledge of their falsity or with reckless disregard of their truth or falsity." *Clark v. Hidden Valley Lake Ass'n*, 2017 U.S. Dist. LEXIS 180418, *13 (N.D. Cal. Oct. 31, 2017). "Actual malice presents a question of fact," as to whether "the evidence suffices to show that respondents acted with the requisite knowledge of falsity or reckless disregard as to truth or falsity." *Manzari,* 830 F.3d at 891.

"In implied defamation cases, where a statement…reasonably implies false and defamatory facts regarding public figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth." *Manzari*, 830 F.3d at 891 (internal quotations omitted). Reckless conduct is measured by whether there is "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Id.*

"While a finding that the publisher's testimony lacks credibility cannot on its own sustain a finding of subjective intent, the denial must be read in the context of other evidence. If all a publisher needed to do was to deny the allegation, all implied defamation suits would be dead on arrival." *Manzari*, 830 F.3d at 892-93. Therefore, while the individuals who worked on the Video—Struck, Burrows, and Demeke— deny that they had an intent to create the implication that Plaintiff and the fan in the Fan Recording were one in the same, these denials must be read in the context of the other evidence.

Defendant knowingly or recklessly made the false and defamatory statements with actual malice, as they created and published the video with the knowledge that the photograph shown of Plaintiff was not in actuality a photograph of the man looking for prostitutes. At the time that the Video pans up on the photograph of

19

Plaintiff, Struck narrates, "Well this man needs to be a bit more DL. He's holding up the phone for all the world to see," before cutting to the Fan Recording. (Ex. A to Def. Mot. to Strike, Video, at 0:51-58). While Struck contends that she actually intended for the screenshot that she had taken of the Fan Recording to be shown at this line, that is not what occurred. Instead, Struck is referring to "this man" as the photograph of Plaintiff is shown. Struck and Burrows knew that Plaintiff was not the man in the Fan Recording, yet, knowing this, they juxtaposed his photograph with this narration, falsely stating that he was the man with his phone out at the Ravens game. Shandy Media's employee Leo Demirjian admitted that Shandy Media knew that Mr. Zirkin was not the man in the Fan Recording. (Ex. 6, Demirjian Email).

The evidence is sufficient to support his claim that Defendant placed his photograph in the Video juxtaposed with the editing "in reckless disregard of whether its words would be interpreted by the average reader as a false statement of fact." *Manzari*, 830 F.3d at 892. Defendants did nothing to explain to the viewer that the man in the photograph was not the same man in the iPhone video. Moreover, Shandy Media claims that the inclusion of Plaintiff's photograph was just meant to depict football fans generally, but the video was of a middle-aged grey-haired Ravens fan, similar to the individual in the video recording, not just any football fan. (Dkt. 23, Def. Mot., at 2).

Defendant's argument that whether Burrows was acting with actual malice cannot be imputed to Shandy Media because he is an independent contractor, not a Shandy Media employee, should be rejected, as the question of whether or not he was an employee is a question of fact for the fact finder. *See D.A.R.E. America v. Rolling Stone Magazine*, 101 F.Supp.2d 1270 (C.D. Cal. 2000). There is a need for discovery as to Burrows' contention that Shandy Media did not exercise control over him. *See* Section C, *supra*.

As only "minimal merit" is need to withstand an anti-SLAPP motion to strike,

1   the Court should hold that Plaintiff has raised a sufficient factual question of a jury

2   to conclude that Defendant acted with reckless disregard for the defamatory

3   implication in its Video.

4   **b.  Plaintiff's false light claim has merit.**

5   A false light claim is based on publicity putting the plaintiff in a false light

6   that would be highly offensive to a reasonable person. *De Havilland v. FX*

7   *Networks, LLC*, 21 Cal. App. 5th 845, 865 (2018). The false light claim also requires

8   proof of malice if the plaintiff is a public figure. *Brodeur*, 248 Cal. App. 4th at 678.

9   California courts have held that invasion of privacy claims, such as false light,

10   may be actionable "if materials such as an article about 'bad' love or sexual

11   molestation are juxtaposed with an illustrative photograph that makes a negative

12   association between the subject matter and the subjects of the photographs." *M.G.*,

13   89 Cal. App. 4th at 631."[W]hen the face of some quite innocent and unrelated

14   citizen is employed to ornament an article on the cheating propensities of taxi

15   drivers, the negligence of children, profane love, man hungry women, juvenile

16   delinquents, or the peddling of narcotics, there is an obvious innuendo that he article

17   applies to him, which places him in a false light before the public, and is

18   actionable." *O'Hilderbrandt v. Columbia Broadcasting System, Inc.*, 40 Cal. App.

19   3d 323, 331 (1974).

20   In *Gill v. Curtis Publishing Co.*, 38 Cal. 2d 273, 276 (1952), famous

21   photographer had taken a picture of plaintiffs, a husband and wife, without their

22   consent as they "spooned" on counter stools in an ice cream shop. Ladies Home

23   Journal magazine published the photograph with an article about love at first sight,

24   describing it as the "wrong kind" of love based only on sexual attraction. *Id.* at 275.

25   Plaintiffs sued, alleging the article portrayed them as immoral and dissolute. *Id.* The

26   court determined there was no legitimate interest in using the plaintiffs' likeness and

27   the article and photograph were not aimed at giving news. *Id.* at 281.

28

21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE COMPLAINT OR,
ALTERNATIVELY, TO DISMISS

Defendant's portrayal of Mr. Zirkin's photograph with accusations that he was seeking to proposition a prostitute placed Mr. Zirkin in a false light. Mr. Zirkin was not the man at the Ravens game looking for prostitutes on Craigslist and this was known to Defendant when it made these assertions about him. Moreover, for the same reasons as previously stated, Defendant acted with actual malice in the publication of the Video.

## B. Plaintiff should be permitted to conduct discovery.

Plaintiff should be permitted the opportunity to conduct discovery in support of its Opposition. While § 425.16(g) provides for a stay of discovery when an anti-SLAPP motion is filed, the Ninth Circuit "has recognized that this provision collides with the Federal Rules of Civil Procedure when a defendant challenges the factual sufficiency of a claim." *Iglesia Ni Cristo v. Cayabyab*, 2019 U.S. Dist. LEXIS 38846, *4 (N.D. Cal. Mar. 11, 2019) (citing *Metabolife Int'l v. Wornick*, 264 F.3d 832, 846-87(9th Cir. 2001)). "Section 425.16(g)'s discovery stay conflicts with the Federal Rule of Civil Procedure 56, which requires that the Court allow discovery where the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Id.* (internal quotations omitted).

In *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018), the Ninth Circuit adopted the reasoning set forth in *Z.F. v. Ripon Unified School District*, 482 F. App'x 239, 240 (9th Cir. 2012): "If a defendant makes an anti-SLAPP motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards; if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted." If the anti-SLAPP motion to strike challenges the claim's factual sufficiency, the Federal Rule of Civil Procedure 56 standard applies and "discovery must be allowed, with opportunities to supplement evidence based on the factual challenges, before any decision is made

by the court." *Planned Parenthood*, 890 F.3d at 834. "A contrary reading of these anti-SLAPP provisions would lead to the stark collision of the state rules of procedure with the governing Federal Rules of Civil Procedure while in a federal district court." *Id.*

Defendant concedes that his anti-SLAPP motion challenges the factual sufficiency of Plaintiff's claims. (Dkt. 23, at 12, n.5). As such, Fed. R. Civ. P. 56 applies and discovery must be allowed. Defendant claims that Burrows, the editor of the Video, was an independent contractor and so his conduct cannot be imputed to Shandy Media. While Burrows has filed an affidavit as to this, Plaintiff seeks the opportunity to depose Shandy Media and Burrows about the relationship to determine if there was an employment relationship. (Ex. 5, Maloney Aff., ¶ 12). Plaintiff also seeks an opportunity to depose Struck, Burrows, and Demeke to determine whether the assertions in their affidavits are credible and to determine their process and decision making in pulling the stock photographs. (*Id.* ¶ 13). Plaintiff seeks an opportunity to depose Struck as to any efforts she made to communicate to Burrows or others her intent to have the Fan Recording screenshot used and also to depose Burrows as to his decision making pertaining to the timing of the photograph's inclusion in the Video and the perception that was created by the inclusion of the photograph. (*Id.*).

The motion to strike should therefore be held in abeyance pending limited discovery to allow Plaintiff to respond to the anti-SLAPP motion.

### C. Plaintiff is entitled to attorney's fees and costs.

The anti-SLAPP statute provides that a court "shall" award reasonable attorneys' fees and costs if the special motion to strike is frivolous or solely intended to cause unnecessary delay. *See* Cal. Civ. Proc. Code § 425(c)(1); *Moore v. Shaw*, 116 Cal. App. 4th 182, 198 (2004) ("[T]he imposition of sanctions for a frivolous anti-SLAPP motion is mandatory"). A motion to strike is frivolous if it is "totally

and completely without merit," and a "reasonably attorney would agree such motion is totally devoid of merit." *Foundation for Taxpayer & Consumer Rights v. Garamendi*, 132 Cal. App. 4th 1375, 1388 (2005). As Defendant's motion to strike is without merit, the Court should award attorneys' fees and costs to Plaintiff, in an amount to be determined by subsequent motion and hearing.

### D. The Complaint should not be dismissed pursuant to Rule 12(b)(6).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted in the complaint, and dismissal is only proper there is a "lack of cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Grigoryan v. Bank of Am. Corp.*, 2012 U.S. Dist. LEXIS 189873, *8 (C.D. Cal. Dec. 31, 2012). "The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party." *Id.* A Rule 12(b)(6) motion to dismiss tests whether a complaint "contain[s]sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted).

Plaintiff has properly pled that Shandy Media was acting with actual malice. Plaintiff pled in the Complaint that Defendant's portrayal of Mr. Zirkin as the man looking for prostitutes on his phone at the Ravens game "was malicious and was made with the intent to harm Mr. Zirkin" as "Defendants knew these statements were false and/or it acted with reckless disregard for the truth." (Compl. ¶ 55). Plaintiff also pled that, "[a]t the time the video was made and published, Defendants had actual knowledge that the statements were false and/or the statements were made with reckless disregard for the truth." (*Id.* ¶ 56). He repeatedly asserts that Defendants "made the statements with actual malice" and "knowingly or recklessly made the false and defamatory statements." (*Id.* ¶¶ 61, 66, 67).

24

The Complaint pleads as to the false impression that Defendants made on viewers of the video that Plaintiff and the man in the Fan Recording are one in the same: "The receipients reasonably understood the publications in the defamatory and false light intended by Defendant: that Mr. Zirkin and the man in the video on Craigslist were one and the same." (*Id.* ¶ 63). The Complaint includes the email from Demirjian acknowledging that Shandy Media knew that the photograph shown was not of the same person as the individual in the Video. (*Id.* ¶ 40).

Moreover, "the issue of 'actual malice'…cannot be properly disposed of by a motion to dismiss, where the plaintiff has had no opportunity to present evidence in support of his allegation." *Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002) (internal quotations omitted); *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 848 (9th Cir. 2001) (holding that the issue of "actual malice" could not properly be dismissed of by a motion to dismiss where there had been no discovery).

Taking the factual allegations as true, Plaintiff has sufficiently pled claims for defamation and false light.

## IV.    CONCLUSION.

Plaintiff Robert Zirkin respectfully requests that this Court deny Defendant's Motion to Strike Complaint and Motion to Dismiss in their entirety.

Dated:  April 1, 2019             By:   /s/ Timothy F. Maloney
                                        Patrick McNicholas (SBN 125868)
                                        Justin J. Eballar (SBN 294718)
                                        McNICHOLAS & McNICHOLAS, LLP
                                        10866 Wilshire Boulevard, Suite 1400
                                        Los Angeles, CA  90024-4338

                                        Timothy F. Maloney (admitted *pro hac vice*)
                                        JOSEPH, GREENWALD & LAAKE, P.A.
                                        6404 Ivy Lane, Suite 400
                                        Greenbelt, MD 20770

                                        *Attorneys for Plaintiff*
                                        25