Scott S. Humphreys (SBN 298021)
 humphreyss@ballardspahr.com
Jay Ward Brown (admitted *pro hac vice*)
 brownjay@ballardspahr.com
Alexander I. Ziccardi (admitted *pro hac vice*)
 ziccardia@ballardspahr.com
**BALLARD SPAHR LLP**
2029 Century Park East, Suite 800
Los Angeles, CA 90067-2909
Telephone: 424.204.4400
Facsimile: 424.204.4350

*Attorneys for Shandy Media, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. ZIRKIN,<br><br>      Plaintiff,<br><br> v.<br><br>SHANDY MEDIA, INC., a California Corporation; ANGELA STRUCK, an individual; RAYMOND ATTIPA, an individual; TIGRANOUHI ATTIPA, an individual; and DOES 1 through 100, inclusive;<br><br>      Defendants. | Case No. 2:18-CV-09207-ODW-SS<br><br>**REPLY IN SUPPORT OF SHANDY MEDIA INC.'S SPECIAL MOTION TO STRIKE COMPLAINT (CAL. CODE CIV. PROC. § 425.16), OR ALTERNATIVELY, TO DISMISS (FRCP 12(B)(6))**<br><br>Hearing Date: May 6, 2019<br>Time: 1:30 p.m.<br>Courtroom: 5D<br>Judge: Hon. Otis D. Wright, II |

**TABLE OF CONTENTS**

I. THE ANTI-SLAPP MOTION SHOULD BE GRANTED ............................. 1

    A. The Public Interest Requirement Is Easily Satisfied ............................ 2

    B. Plaintiff Is Not Likely To Prevail On His Claims ................................ 5

        1. Mr. Burrows was an independent contractor .............................. 6

        2. Shandy did not subjectively intend to create a false impression about Plaintiff ............................................................ 7

    C. Any Discovery Should Be Strictly Limited To The Issue Presented By The Anti-SLAPP Motion ................................................ 9

    D. Plaintiff Is Not Entitled To Fees and Costs ........................................ 10

    E. The Individual Defendants Are Entitled to Fees and Costs ................ 11

II. ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE GRANTED .................................................................................................. 11

III. CONCLUSION .......................................................................................... 12

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Annette F. v. Sharon S.*,
   119 Cal. App. 4th 1146 (2004) .................................................................................... 6

*In re Aroonsakool*,
   2012 WL 458819 (S.D. Cal. Bankr. Feb. 9, 2012) ............................................. 10

*Briscoe v. Reader's Digest Association, Inc.*,
   4 Cal. 3d 529 (1971) ...................................................................................................... 4

*Chitsazzadeh v. Kramer & Kaslow*,
   199 Cal. App. 4th 676 (2011) .................................................................................. 10

*Cross v. Cooper*,
   197 Cal. App. 4th 357 (2011) .................................................................................... 5

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845, 870 (2018) .............................................................................. 8

*Eastwood v. National Enquirer, Inc.*,
   123 F.3d 1249 (9th Cir. 1997) .................................................................................... 7

*eCash Technologies, Inc. v. Guagliardo*,
   210 F. Supp. 2d 1138 (C.D. Cal. 2001) ................................................................ 11

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*,
   29 Cal. 4th 53 (2002) .................................................................................................... 1

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) ................................................................................. 11

*Heller v. NBCUniversal, Inc.*,
   2016 WL 6583048 (C.D. Cal. June 29, 2016) ...................................................... 9

*Hennighan v. Insphere Insurance Solutions, Inc.*,
   38 F. Supp. 3d 1083 (N.D. Cal. 2014) .................................................................... 6

*Lieberman v. KCOP Television, Inc.*,
   110 Cal. App. 4th 156 (2003) .................................................................................... 5

Ballard Spahr LLP
2029 Century Park East, Suite 800
Los Angeles, California 90067-2909

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ................................................................................. 8

*Metabolife International, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ............................................................................... 12

*Mireskandari v. Daily Mail & General Trust PLC*,
    2014 WL 12561581 (C.D. Cal. Aug. 4, 2014) ..................................................... 11

*Newton v. National Broadcasting Co.*,
    930 F.2d 662 (9th Cir. 1990) ................................................................................. 9

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) .............................................................................. 2

*Poland v. United States Attorney General*,
    2012 WL 13001837 (C.D. Cal. Jul. 30, 2012) ...................................................... 6

*Reed v. Gallagher*,
    248 Cal. App. 4th 841 (2016) ................................................................................ 6

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003) .............................................................................. 4

*World Financial Group, Inc. v. HBW Insurance & Financial Services, Inc.*,
    172 Cal. App. 4th 1561 (2009) .............................................................................. 3

**Statutes**

Cal. Civ. Proc. Code § 425.16 ................................................................................. 2, 5, 10

In his Opposition ("Opp.") to Shandy's Motion ("Mot."), Plaintiff both misconstrues the scope of the anti-SLAPP statute's public interest requirement, and also misstates the type of evidence he must put forth to support a finding of actual malice. As Shandy explains more fully below, these efforts to avoid application of the anti-SLAPP statute are unavailing. And, even if the anti-SLAPP motion were not granted as to Shandy, the Individual Defendants (who indisputably had no role in publishing the alleged defamatory implication at issue) are nonetheless entitled to an award of their fees and costs because they were voluntarily dismissed from this lawsuit *after* the anti-SLAPP motion was filed.

Finally, if for any reason the Court is not prepared to apply the anti-SLAPP statute, the Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff effectively concedes in his Opposition that he has not and cannot allege facts that plausibly would support a finding of actual malice.

## I. THE ANTI-SLAPP MOTION SHOULD BE GRANTED

Plaintiff suggests that the anti-SLAPP statute should not apply to his claims because "he did not file suit in an effort to tie up [Shandy's] resources or intimidate or silence [Shandy]." Opp. at 2, Dkt. No. 31.[1] Accepting that representation as true for present purposes, Plaintiff's motivation for filing this lawsuit is wholly irrelevant to the question of whether his claims are properly subject to a special motion to strike. *See Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 58-59 (2002) (expressly rejecting an "intent-to-chill" requirement for anti-SLAPP motions). Rather, under the plain language of the California statute, the Complaint must be stricken if (1) the Video Report was in furtherance of Shandy's

---

[1] Plaintiff instead claims to seek recovery for "harm to his reputation and character in the small legal and political field in Maryland." Opp. at 9. While the issue of damages is not presented by Shandy's Motion, in fairness, it bears note that Mr. Zirkin easily secured reelection to his Senate post after the Video Report was published, a fact of which the Court may take judicial notice. *See* 2018 Maryland State Senate Election Results, available at https://wtop.com/local-politics-elections-news/2018/11/2018-maryland-state-senate-election-results/ (last visited, Apr. 9, 2019).

free speech rights and was made in connection with a public issue or an issue of public interest, and (2) Plaintiff is not likely to prevail on his claims. *See* Mot. at 8-20, Dkt. No. 23. Both of these conditions are met here.

### A. The Public Interest Requirement Is Easily Satisfied

Plaintiff does not dispute that Shandy published the Video Report in furtherance of its speech rights. *See* Cal. Civ. Proc. Code § 425.16(a). He instead argues that the Video Report was not made "in connection with a public issue or an issue of public interest." Opp. at 9-15. Plaintiff is wrong.

Faced with indisputable evidence that several other media outlets also published stories about the iPhone recording of the "sexting" incident, Plaintiff misleadingly claims that those media outlets merely "republished" what Shandy had reported. Opp. at 11. But that is not what happened. The record conclusively establishes that several media outlets published reports on the iPhone recording ***prior to and independent from*** Shandy's Video Report. *See* Mot. at 10.[2] Thus, in publishing the Video Report, Shandy was simply reporting on a preexisting controversy in which the public had already taken an interest. *See id*. That alone is sufficient to satisfy the anti-SLAPP statute's public interest requirement. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) ("an issue of public interest . . . is *any issue in which the public is interested*.").

Shandy's Video Report meets the public interest requirement for the additional reason that it encourages further public discussion, specifically by asking viewers to submit their own stories of inappropriate stadium behavior and also to comment on the occurrence of "accidentally glanc[ing at] at someone's iPhone." Mot. at 11.

---

[2] Shandy does not dispute that some media outlets *also* subsequently republished its Video Report, but that is not the relevant point. What Plaintiff refuses to acknowledge is that the iPhone recording had received widespread press coverage *before* Shandy distributed its report – indeed, it was that coverage that caused Shandy to conclude that the event merited further public commentary. *See* Mot. at 10, Decl. of M. Demeke ¶ 4, Dkt. No. 23-6.

2
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE OR ALTERNATIVELY TO DISMISS

Plaintiff has no good response to this. He instead relies on an inapplicable line of non-media cases, each of which involved a scenario where the defendant's speech arose from a purely private feud or personal business dispute with the plaintiff. *See* Opp. at 11-13 (citing *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1134 (2003) (speech arose from "private dispute between private parties"); *Steep Hill Labs., Inc. v. Moore*, 2018 WL 1242182, at *6 (N.D. Cal. Mar. 8, 2018) (personal "attacks" made in context of "private workplace dispute"); *Bikkina v. Mahadevan*, 241 Cal. App. 4th 70, 82-83 (2015) ("speech was a private campaign to discredit another scientist at the University"); *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 101, 111 (2004) (speech involved "numerous acts of harassment" against plaintiff business competitor); *World Fin. Grp., Inc. v. HBW Ins. & Fin. Servs., Inc.*, 172 Cal. App. 4th 1561, 1569 (2009) (speech was "for the sole purpose of promoting a competing business")).

These cases collectively hold that a defendant cannot turn a purely private controversy into a public one by referring to a "broad and amorphous public interest"; and thus the relevant inquiry is "the specific nature of the speech rather than the generalities that might be abstracted from it." *See, e.g.*, *World Fin. Grp.*, 172 Cal. App. 4th at 1570. Here, however, the specific nature of Shandy's speech did not arise in a private dispute between it and Plaintiff. Rather, the challenged statements were made in the context of a pre-existing *public* discussion of the iPhone recording and were contained in a widely disseminated online news report that expressly encouraged further public discussion on two topics of public interest—bad behavior by fans at sporting events, and the well-documented social phenomenon of peeking at other people's phone screens. *See* Brown Decl. Ex. A, Dkt. No. 23-1. Those topics are not "generalities that might be abstracted from [the Video Report]." *World Fin. Grp.*, 172 Cal. App. 4th at 1570. They instead are found in the plain language of the Report itself. The public interest requirement is satisfied for this second, independent reason.

Shandy also argued in its Motion that the public interest requirement is satisfied for the further independent reason that the Video Report concerned a crime. *See* Mot. at 10-11. Plaintiff asserts in response that it would be "far too broad a generalization" to hold that news reports on criminal conduct will satisfy the public interest requirement. Opp. at 14. In doing so, Plaintiff again relies on *Weinberg*, a case in which the defendant falsely accused the plaintiff of theft in connection with a purely private dispute. 110 Cal. App. 4th at 1127. In concluding the public interest requirement was not satisfied in that case, the court in *Weinberg* expressly limited its holding to "false allegations of criminal conduct, *made under circumstances like those alleged in this case*" —*i.e.*, a "private campaign . . . to discredit [the] plaintiff." *See id*. at 1135-36 (emphasis added). *Weinberg* thus has no application here. *See supra*, at 3.

And, while Plaintiff also relies on *Briscoe v. Reader's Digest Ass'n, Inc.*, 4 Cal. 3d 529, 536-47 (1971), that case actually supports Shandy's position. The court in *Briscoe* held that, while news reports on crimes committed in the distant past may not always involve a matter of public interest, reports on recently committed crimes always undoubtedly will. *See* 4 Cal. 3d at 536, *overruled on other grounds by Gates v. Discovery Communications, Inc.*, 34 Cal. 4th 679 (2004). Under *Briscoe*, the public interest requirement is satisfied because Shandy published the Video Report within days of the alleged solicitation having occurred. *See* Brown Decl. Ex. A.

Plaintiff then attempts to fashion a rule that reports on criminal activity will satisfy the public interest requirement only where they (1) include "commentary on the societal problems," or (2) are made "for purposes of protecting the public." Opp. at 15. Under Plaintiff's cramped reading, a local news broadcast concerning a criminal act caught on surveillance video would not fall within the anti-SLAPP statute unless it expressly met one of those two requirements. That strained interpretation flatly ignores the Legislature's express mandate that the public

4
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE OR ALTERNATIVELY TO DISMISS

interest requirement "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a); *Cross v. Cooper*, 197 Cal. App. 4th 357, 372 (2011) ("courts have broadly construed 'public interest'"). Plaintiff's attempt to engraft new requirements onto the statute therefore should be rejected. *See, e.g.*, *Lieberman v. KCOP Television, Inc.*, 110 Cal. App. 4th 156, 164 (2003) (concluding that news broadcast capturing footage of drug sale met public interest requirement without having to decide whether broadcast included any broader "commentary on societal problems" or was made with purpose of "protecting public," and instead finding it sufficient that crime itself was "societal ill").

Plaintiff's claims arise out of a Video Report that (a) involved a viral iPhone recording that *already* had received considerable media attention, (b) expressly encouraged viewers to contribute to a discussion on at least two subjects of public concern, and (c) addressed recent criminal activity. The public interest requirement plainly is satisfied under these circumstances.

### B. Plaintiff Is Not Likely To Prevail On His Claims

Plaintiff does not dispute that, if the Court agrees that the anti-SLAPP statute applies in the first instance, then, as a public official, he must show that he likely can meet his burden of proving actual malice – that is, that Shandy was aware of and intended to publish the alleged defamatory implication about him. Plaintiff then materially understates his burden under the anti-SLAPP statute's "probability of success" prong by citing inapposite cases that do not implicate the constitutional defense of actual malice. *See* Opp. at 16 (citing *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, 2012 WL 3877783, at *18 (N.D. Cal. Sept. 6, 2012) (raising defenses of litigation privilege and *Noerr-Pennington* doctrine); *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 600 (9th Cir. 2010) (raising defense of no breach of fiduciary duty); *Grenier v. Taylor*, 234 Cal. App. 4th 471, 483 (2015) (actual malice standard did not apply)).

The distinction is important. "Courts must take into consideration the applicable burden of proof in determining whether the plaintiff has established a probability of prevailing." *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1166-67 (2004). Because actual malice must be proven by "clear and convincing evidence," *see* Mot. at 16, Plaintiff can defeat the anti-SLAPP motion only by "mak[ing] a prima facie showing *of facts* demonstrating *a high probability* that [Shandy] published the challenged statements [with actual malice]." *Reed v. Gallagher*, 248 Cal. App. 4th 841, 862 (2016) (emphasis added).

Plaintiff cannot make that showing. His defamation and false light claims fail because he is unlikely to prove by clear and convincing evidence that Shandy published the Video Report with actual malice—*i.e.*, with a subjective intent to convey a false impression about him. *See* Mot. at 15-20. None of Plaintiff's arguments in his Opposition prove otherwise.

### 1. Mr. Burrows was an independent contractor.

Mr. Burrows was solely responsible for deciding where the Photograph would appear in the Video Report. *See* Mot. at 4-5; Burrows Decl. ¶19, Dkt. No. 23-5. Plaintiff does not dispute that, if Mr. Burrows was an independent contractor, his state of mind cannot be imputed to Shandy for actual malice purposes. *See* Opp. at 20. Instead Plaintiff baldly asserts that "the question of whether or not [Mr. Burrows] was an employee is a question of fact for the fact finder." *Id*.

Not so. California courts do not hesitate to classify a worker as an independent contractor *as a matter of law* where "the factors point so favorably in one direction that a fact finder could not reasonably reach the opposite conclusion." *Poland v. United States Attorney General*, 2012 WL 13001837, at *16 (C.D. Cal. Jul. 30, 2012) (citation and quotation); *see also Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1107 (N.D. Cal. 2014) (classifying worker as independent contractor as matter of law even where "one or two of the individual factors might suggest an employment relationship").

6
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE OR ALTERNATIVELY TO DISMISS

Here, all factors point in favor of classifying Mr. Burrows as an independent contractor, *see* Mot. at 17 n.7, and Plaintiff has not *even attempted* to argue otherwise, *see* Opp. at 20. Mr. Burrows' state of mind therefore cannot be imputed to Shandy for actual malice purposes, and—even if Mr. Burrows did intend the defamatory implication (which he did not)—Plaintiff's claims against Shandy fail for this simple reason.[3]

### 2. Shandy did not subjectively intend to create a false impression about Plaintiff.

Even if Mr. Burrows were a Shandy employee, neither he— nor anyone else working on the Video Report—subjectively intended to convey that Plaintiff was the man in the iPhone recording. Rather, the evidence shows that any such impression was the result of an honest mistake. In creating the script for the Video Report, Ms. Struck intended that a still image from the iPhone video would be used under her narration about "this man" needing to be a bit more "DL," and that stock photos of fans at a Ravens game would be used under her narration about the game. *See* Mot. at 6; Struck Decl. ¶22, Dkt. No. 23-4. The editor, Mr. Burrows, unfortunately used the Photograph at the moment in the video when Ms. Struck says "this man." He did not know that the photo featured Plaintiff and did not intend to create the implication that he was soliciting prostitutes. *See* Mot. at 5, Burrows Decl. ¶¶ 18-19. This, too, defeats Plaintiff's claims as a matter of law. *See* Mot. at 15-20; *see also Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1256 (9th Cir. 1997) ("there is no actual malice where journalists unknowingly mislead the public"); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (granting anti-SLAPP motion where sworn declarations established any defamatory implication was unintended).

---

[3] Plaintiff claims to need discovery of Mr. Burrows, a non-party. But precisely because his state of mind cannot be attributed to Shandy, his testimony on that subject is legally irrelevant to actual malice.

7
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE OR ALTERNATIVELY TO DISMISS

In arguing otherwise, Plaintiff relies on a single case, *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881 (9th Cir. 2016). While *Manzari* was also a defamation-by-implication case involving an image of the plaintiff, that is where the similarities to this case end. Importantly, the court in *Manzari* confirmed that "it is not enough that the defamatory implication 'should have been foreseen' by [the defendant] . . . or that an 'ordinary viewer would have perceived the implication.'" 830 F.3d at 892 (citations omitted). Instead, there must be evidence—separate and independent from the contents of the challenged publication—demonstrating that the defendant was subjectively aware of the false impression and thus intentionally conveyed that impression to the public. *See id.*

The court in *Manzari* found two pieces of such evidence in that case: First, the authors of the challenged report in *Manzari* "actively removed key contextual information" from the caption accompanying the image of the plaintiff, and replaced it with information reinforcing the impression that she had HIV. *See id.* at 892. Second, the image of the plaintiff was not a "stock image"—instead it was an image of a world-famous pornographic actress known to the defendants and being used by them in an article concerning an HIV epidemic in the pornography industry. *See id.* at 893.

That sort of evidence is not even alleged to be present here. Instead, Plaintiff's *sole* argument for actual malice is his allegation that the Video Report falsely implied that he was the "grey-haired Ravens fan" shown in the iPhone recording. Opp. at 20. But that is merely a roundabout way of alleging that the defamatory implication is "clear and inescapable" from the Video Report. *See Newton v. Nat'l Broad. Co.*, 930 F.2d 662, 679 (9th Cir. 1990). That is *not* sufficient evidence of actual malice. *See id.*; *see also* Mot. at 15-20.[4]

---

[4] Plaintiff argues that Shandy "knew" that Plaintiff was not the man in the iPhone recording. *See* Opp. at 18-20. But that is a red herring. Because this is a defamation-by-implication case, Plaintiff must prove by clear and convincing evidence that Shandy *intended* to imply that Plaintiff was the man in the iPhone recording—that it intentionally juxtaposed an image it knew to be of Plaintiff with the Video Report's narration so as to deliberately create the

8

### C. Any Discovery Should Be Strictly Limited To The Issue Presented By The Anti-SLAPP Motion

To the extent this Court grants Plaintiff's request to take discovery, *see* Opp. at 22-23, it "must be strictly limited to" the issue raised by the anti-SLAPP motion—*i.e.*, actual malice, *see Heller v. NBCUniversal, Inc.*, 2016 WL 6583048, at *10 (C.D. Cal. June 29, 2016).

Additionally, any permitted discovery should not be duplicative of discovery Plaintiff has already taken in the Maryland Action. While Plaintiff suggests the discovery in those proceedings had no bearing on the merits of his claims, *see* Maloney Decl. ¶¶ 9-10, Dkt. No. 31-5, that is not true. For example, Ms. Struck's interrogatory responses in the Maryland Action bear directly on the issue of actual malice, as they explain her lack of involvement in deciding where the Photograph would appear in the Video Report. *See* Brown Decl. Ex. D at 9-10. All of the other evidence of record, including both the other affidavits and the testimony of Shandy's corporate designee, supports her description of her role in the Video Report and Plaintiff cannot point to a scintilla of evidence calling into question the "credibility," as he puts it, of her factual account of her role. For that reason, there is no basis on which Plaintiff needs to take testimony from Ms. Struck.

Interrogatory responses from Raymond Attipa likewise establish that he had no role in creating the Video Report whatsoever, *see id.* at 3, and he therefore has no personal knowledge of the events on the day in question that conceivably could bear on actual malice. Plaintiff therefore has no basis for deposing Mr. Attipa. And, to the extent the Court concludes that Plaintiff is entitled to further deposition of a corporate representative of Shandy, Plaintiff should be required to serve such a

---

defamatory meaning. *See* Mot. at 13-15. He has not done so. The Video Report on its face dispels the contention that Shandy was deliberately confusing Plaintiff with the "sexter": The Photograph of Plaintiff appears with narration observing that "[this man]'s holding up the phone for all the world to see." Mot. at 6; Brown Decl. Ex. A. While the "sexter" in fact was holding up a phone in precisely that way, Plaintiff is not holding a phone in the Photograph.

9
REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE OR ALTERNATIVELY TO DISMISS

notice, designating the subjects pertinent to actual malice on which he seeks testimony, and Shandy will designate an appropriate representative.

### D. Plaintiff Is Not Entitled To Fees And Costs

Plaintiff has no basis for seeking attorneys' fees and costs. *See* Opp. at 23-24. While an award of fees to the prevailing defendant is mandatory if the anti-SLAPP motion is granted, *see* Cal. Civ. Proc. Code § 425.16(c)(1), where the motion is denied, fees are permitted only if the motion is "frivolous," *id*. An anti-SLAPP motion will be frivolous only in exceedingly rare cases, such as where it is "(A) *totally and completely* without merit; or (B) for the *sole purpose* of harassing an opposing party." *See Chitsazzadeh v. Kramer & Kaslow*, 199 Cal. App. 4th 676, 683-84 (2011) (emphasis added).

Those circumstances are not present here. At the very least, the Individual Defendants succeeded on their anti-SLAPP motion, as Plaintiff voluntarily dismissed them from the case only after the motion was filed. *See infra*, at 11. Plaintiff's request for fees can thus be rejected out-of-hand, because "[w]hen an anti-SLAPP motion has *partial merit*," it is not frivolous. *See In re Aroonsakool*, 2012 WL 458819, at *2 (S.D. Cal. Bankr. Feb. 9, 2012) (citing *Gerbosi v. Gaims, Weil, West & Epstein, LLP*, 193 Cal. App. 4th 435, 450 (2011)). And, even if the Court ultimately denies the anti-SLAPP motion as to Shandy (it should not), that does not mean "any reasonable attorney would agree [the] motion is totally devoid of merit." *Chtisazzadeh*, 199 Cal. App. 4th at 683-84. Plaintiff's request for attorneys' fees and costs should therefore be denied.

### E. The Individual Defendants Are Entitled To Fees and Costs

Even if Plaintiff could establish a likelihood of succeeding against Shandy (he cannot), the Individual Defendants would still be entitled to their attorneys' fees and costs. Where, as here, a defendant is voluntarily dismissed from a lawsuit after filing an anti-SLAPP motion, the defendant is entitled to recover its attorneys' fees and costs as the prevailing party. *See eCash Techs., Inc. v. Guagliardo*, 210 F.

Supp. 2d 1138, 1154-55 (C.D. Cal. 2001).

Moreover, under these circumstances, there is a *presumption* that the dismissed defendant is the prevailing party, which the plaintiff can rebut only if "it actually dismissed [the defendants] because it had substantially achieved its goals through a settlement or other means, because the defendant[s] w[ere] insolvent, or for other reasons unrelated to the probability of success on the merits." *See Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2014 WL 12561581, at *5 (C.D. Cal. Aug. 4, 2014) (citation and quotation omitted).

Plaintiff cannot rebut the presumption here. It is apparent that Plaintiff voluntarily dismissed the Individual Defendants because he could not bring viable claims against them. Indeed, those Defendants were not even responsible for publishing the allegedly defamatory implication at issue. *See* Mot. at 12-13, 16-17. Accordingly, the Individual Defendants should be awarded their attorneys' fees and costs, in an amount to be determined at a subsequent hearing.

## II. ALTERNATIVELY, THE MOTION TO DISMISS SHOULD BE GRANTED

Plaintiff's Complaint also is subject to dismissal under Rule 12(b)(6) because it does not sufficiently plead actual malice. *See* Mot. at 22-23. Plaintiff expressly concedes in his Opposition that he is relying solely on "actual malice buzzwords" – *i.e*, rote recitals that Shandy "knew the[] statements were false" or "acted with reckless disregard for their truth." *See* Opp. at 24. He then asserts that this sort of bare-bones pleading was accepted as adequate in *Flowers v. Carville*, 310 F.3d 1118 (9th Cir. 2002), and *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001). The problem for Plaintiff is that those two cases pre-date the U.S. Supreme Court decisions in *Iqbal* and *Twombly* and are therefore irrelevant to the pleading standard applicable in federal courts today. Following *Iqbal* and *Twombly*, every circuit court that has addressed the issue has required the plaintiff to allege *specific facts* to *plausibly* support a finding of actual malice. *See* Mot. at

21. Plaintiff did not do so in his Complaint, *see* Mot. at 22-23, and he has not even attempted to identify any such facts in his Opposition. His Complaint should therefore be dismissed under Rule 12(b)(6) regardless of the Court's ruling on Shandy's Motion to Strike. *See id*.

## III. CONCLUSION

The anti-SLAPP motion should be granted and Shandy and the Individual Defendants should be awarded their attorneys' fees and costs. In the event that the anti-SLAPP motion is not granted as to Shandy, the Individual Defendants should nonetheless be award their attorneys' fees and costs on the basis that they were voluntarily dismissed from the lawsuit after their anti-SLAPP motion was filed. Alternatively, the Complaint should be dismissed pursuant to Rule 12(b)(6).

DATED: April 15, 2019

**BALLARD SPAHR LLP**

By: /s/ *Jay Ward Brown*
    Jay Ward Brown
     (admitted *pro hac vice*)
    Scott S. Humphreys
     (SBN 298021)
    Alexander I. Ziccardi
     (admitted *pro hac vice*)

*Attorneys for Shandy Media, Inc.*